M. E. WHITTLESEY, Appellant, v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY.

121 597
128 354

121 597
129 450

**Railroads:** INJURY TO PASSENGER: EVIDENCE OF BROKEN RAIL.
1    In an action for injuries to a passenger caused by a broken rail, evidence of other broken rails remote from the accident is incompetent to show that this rail was broken before the train passed onto it; and evidence of other broken rails lying intact in position is inadmissible for the purpose of rebutting the testimony of defendant's witnesses that they passed over the road a short time before the accident and saw no broken rails, and that they could have seen them if broken.

121 597
138 285

**Mental Unsoundness:** EVIDENCE OF.    In an action for injuries
2    resulting from a railway accident, where the only evidence pointed out disclosing plaintiff's mental condition at the time a claimed settlement was made, is that which tends to show mental disability following the accident and which has relation to the question of her damage, evidence of a physician that persons who are insane or have deranged minds at times appear and converse in a sane manner, is inadmissible.

**Mental Unsoundness:** INSTRUCTION.    In an action for a personal
3    injury, an instruction with reference to the effect of a settlement that if plaintiff "knowingly signed the agreement, but at the time gave little attention to its contents, did not read or ask to have it read to her, then she was bound thereby," standing alone, would be insufficient on the question of mental incapacity, but taken in connection with the other instructions on the subject was not misleading.

Instruction: ASSUMING FACTS NOT IN CONTROVERSY: BURDEN OF PROOF. In an action for personal injury where the extent of the injury is denied, an instruction that if the jury found. plaintiff was injured and suffered pain and anguish and that the same was the result of defendant's negligence in operating its train, she should recover unless they found a settlement, was not erroneous as assuming a controversy as to the fact of injury, or as casting upon plaintiff the burden of proving negligence, as such burden was on the plaintiff, but was sustained by proof of the injury resulting from the broken rail.

New Trial: EXPERT TESTIMONY. A new trial will not be granted on the ground of newly discovered expert testimony which could have been furnished by other witnesses at the trial.

Railroads: INJURY TO PASSENGER: DEFECTIVE TRACK: OTHER DEFECTS. Where an injury to a passenger occurs by reason of an accident caused by a broken rail, evidence of the breaking of rails at nearby points where the conditions generally were the same as at the place of the accident, is competent, where it is charged that the defendant failed to use the degree of care imposed by law in the construction and maintenance of a sufficient track for the operation of its trains, and where it appears that the rails in use were so light and the trains operated so heavy that frequent breakings occurred.

Settlement of Injury: MENTAL INCOMPETENCY: EVIDENCE. Where a settlement for an injury to a passenger is obtained shortly after the accident, and plaintiff claims that at the time she was undergoing such pain and suffering that she was incompetent to make the same, and had no recollection thereof, and the only evidence of her capacity offered by defendant was that she appeared to be in possession of her mental faculties at the time, it is competent for plaintiff to show on rebuttal that an insane or deranged person at times appears and converses in a sane manner.

*Appeal from Dickinson District Court.—*HON. W. B. QUARTON, Judge.

MONDAY, MAY 19, 1902.

ACTION to recover damages for personal injuries received by plaintiff while riding as a passenger on defendant's train. Verdict and judgment for defendant, from which plaintiff appeals.

*Funk & Weed, Milt H. Allen* and *J. G. Myerly* for appellant.

*L. E. Francis* and *S. K. Tracy* for appellee.

McCLAIN, J.—Numerous assignments of error are argued by appellant's counsel, but they can be satisfactorily disposed of under a few general headings.   The acci-

1. INJURY to passenger: evidence of broken rails.

dent happened by reason of the ditching of defendant's passenger train, due to a broken rail.   Plaintiff's counsel sought to show that the rail was broken before the train went upon it, and for this purpose asked witnesses whether they had seen broken rails on other sections of the road.   The court refused to receive this evidence, and, we think, properly.   The fact that broken rails had been seen on other parts of the road would plainly not be material in determining whether this particular rail was broken when the train ran upon it. Other questions were asked on behalf of plaintiff with reference to whether witnesses had ever seen broken rails lying intact in position; and it is claimed that this evidence, if admitted, would have rebutted the testimony of defendant's witnesses that they had passed over the track a short time before the wreck occurred, and discovered no broken rails, and that they would have noticed a broken rail had there been one, even if it had been broken on top of the ties.   But here again the difficulty is that the evidence, if admitted, would tend to show negligence by the defendant in not discovering broken rails on some other and distant part of the track.   Such evidence was plainly immaterial.

Evidence was introduced in behalf of defendant tending to show a settlement with plaintiff for a consideration paid; and counsel for plaintiff, for the purpose of proving

2. MENTAL unsoundness: evidence of.

that plaintiff was out of her mind at the time of the settlement, asked a physician to

testify "as to whether persons that are insane, or have de-
ranged minds, at some times appear to be sane, and talk
practically sane upon subjects, and converse in practically
a sane manner." This question was objected to for the
reason that there had been no evidence introduced that
plaintiff was in any manner insane at the time of the set-
tlement, and the objection was sustained. Counsel for
appellant does not point out any evidence which would
tend to show that plaintiff was out of her mind when the
settlement was made, and therefore we must assume that
the ruling of the court was correct. There was some evi-
dence tending to show a mental deterioration in plaintiff
following the accident, but the testimony on this point
related to the measure of damage, and not to the condition
of plaintiff's mind when the settlement was made, within
a short time after the injury. But aside from the fact
that the objection was well taken, it appears that the wit-
ness did answer the question, and no prejudice could have
resulted from the ruling. This answer was followed by
another question as to whether that is the rule or not with
patients of unsound mind, but certainly, in the absence of
some evidence that the plaintiff was of unsound mind at
the time of the injury, this ruling was not erroneous.

In the same connection we may consider an exception
to an instruction with reference to the effect of the settle-
ment. Counsel for plaintiff complains because the court
3. MENTAL un-   told the jury that, if the plaintiff "knowingly
soundness:
instruction.   signed the agreement, but at the time she
signed it she gave little attention to its contents, or did
not read it, or ask that it be read to her, then she was
bound thereby"; and it is contended that this was not a
sufficient statement with reference to the defense of men-
tal incapacity. Standing alone, it would, no doubt, be an
insufficient presentation of the question, but in a previous
instruction the court had gone at length into the matter,
and the instruction complained of was a mere corollary to

that already given.    It was not, in itself, misleading, in
view of the other instruction.    The principal instruction
on the subject is not open to the same objection, although
it is criticised by appellant's counsel.    It does set out, we
think, at sufficient length and with definiteness and clear-
ness, the effect to be given to any evidence tending to show
want of mental capacity on the part of plaintiff to execute
a valid settlement.    The criticism that the word "know-
ingly" is used in this connection is not well founded, for
the meaning of the court in the use of that expression is
made perfectly clear by the instruction taken as a whole.

An instruction is complained of in which the jury
were told that if they believed from the evidence that the
"plaintiff was injured and bruised about her body and
head, thereby causing the plaintiff to suffer
4. INSTRUCTIONS: physical pain and mental anguish," and that
assuming
facts not in
controversy: the injury was caused through the carelessness
burden of
proof. or negligence of the defendant or its employes
in running, controlling, and operating the train on which
plaintiff was a passenger, or in the construction, repair,
and looking after the roadbed and tracks of the defend-
ant's line of road, etc., then the plaintiff would be entitled
to recover, unless the jury should find that there had been
a valid settlement.    The first objection to this instruction
is that it assumes that there was a controversy as to
whether plaintiff was actually injured, whereas in fact
there was no controversy as to the injury to plaintiff; but
it appears from the pleadings that while the defendant
did not deny the fact of injury, it did deny that plaintiff
was injured to the extent claimed, and the court was there-
fore justified in calling the jury's attention to the extent
of the injury.    But the further objection is made that this
instruction threw upon the plaintiff the burden of proving
that defendnt was negligent.    In making this objection
we think counsel do not distinguish between the burden
of proof under the issues, and the burden of proof

with reference to the weight of evidence. The plaintiff alleged negligence on the part of defendant causing the injury, and this is denied by the defendant. The burden of proof was therefore, under the issues, on the plaintiff. It is true that in an action against a railroad for injuries received by a passenger, resulting from an accident in the operation of the train, which accident is of such a nature that it would not usually happen without negligence, evidence of the happening of the accident and the injury to plaintiff resulting therefrom is generally held to be *prima facie* sufficient to establish negligence, and to cast on the defendant the burden of proving want of negligence on its part in connection with the accident. *Smith v. Railway Co.*, 32 Minn. 1 (18 N. W. Rep. 827, 50 Am. Rep. 550); *Spellman v. Transit Co.*, 36 Neb. 890 (55 N. W. Rep. 270, 20 L. R. A. 316, 38 Am. St. Rep. 753); *Gleeson. v. Railroad Co.*, 140 U. S. 435 (11 Sup. Ct. Rep. 859, 35 L. Ed. 458). But, as said in *Pershing v. Railway Co.*, 71 Iowa, 561: "The rule which casts the burden of proof on the carrier is a rule of evidence, having its foundation in considerations of policy. It prescribes the quantum of proof which the passenger is required to produce in making out his case originally, and he is entitled to recover on that proof unless the carrier can overcome the presumption which arises under the rule from the facts proven." The burden of proof in this case under the issues was on the plaintiff, but that burden was sufficiently sustained when it was established by the evidence that the injury was received by reason of the derailment of the train. The presumption of negligence arising from this evidence could be overcome only by proof on the part of defendant that it was without negligence with reference to such accident. There is nothing in the instruction complained of which is inconsistent with this view of the law, and the criticism thereof is without foundation. The same suggestion disposes of objections to other instructions in which the court

in a general way told the jury that the burden was on plaintiff to establish defendant's negligence.

Complaint is made of refusal to grant a new trial on account of newly discovered evidence, but it is enough to say that such evidence related to matters of expert knowl-

5. NEW trial expert testimony.
edge in regard to railroading, and could have been furnished by any expert witnesses, as well as by those named in the application. The showing was not sufficient to entitle plaintiff to a new trial in that respect.

We have not taken the time to discuss all the assignments, but have considered all that seem to us to have any possible merit. The result is that the judgment of the lower court is AFFIRMED.

### SUPPLEMENTAL OPINION, OCTOBER 29, 1903.

A petition for rehearing was sustained, and the cause is now before us upon resubmission. The opinion sufficiently states the case. —*Reversed.*

PER CURIAM.—Two points only, as made by the petition for rehearing, need be noticed. Upon the trial, plaintiff offered evidence tending to. prove that broken rails had been seen on other and nearby portions of the defendant's road; also that the general condition of the track where such broken rails were seen, as to being straight, etc., was the same as at the point of the accident. This evidence was rejected, and in our former opinon we held that the ruling was correct. The opinion, however, proceeds upon the theory that the evidence was offered to show that the rail, the breaking of which caused the accident, was broken before the train went upon it. Accepting such as the purpose of the testimony offered, there can be no question as to the soundness of the views expressed in the first division of the opinion. But counsel for appellant now direct our attention to the fact, and insist that such was not the purpose of the evidence; and

the opinion is assailed, not because the proposition as therein stated is unsound in principle, but because of a misapprehension on our part of the purpose of the evidence, and the question in the case to which it was intended to have application. The injury of which plaintiff complains was caused by the derailment of the train on which she was riding, and it was stipulated at the trial that such derailment was due to a broken rail. It is the averment of the petition that the accident was the result of carelessness and negligence on the part of defendant in the operation of its train, and also in the construction and maintenance of its roadbed and tracks, and in the want of attention thereto. There is no direct averment of negligence having reference alone to the particular rail which was broken in the accident. Plaintiff having offered evidence showing the circumstances of the accident, the defendant then introduced evidence respecting the condition of the roadbed and track, and the attention given thereto; also evidence tending to prove that there was no patent defect in the broken rail, and that the rails in use in the track generally were purchased of a manufactory having a first-class reputation. On behalf of plaintiff there was then further evidence tending to show that the rails in use were light, weighing about fifty-two pounds to the yard, and that rails of such weight frequently break under heavy pressure in extreme cold weather; that on the day in question, and for several days previous, the thermometer had been standing at about forty degrees below zero. Several witnesses had testified that the engines in use by defendant were too heavy, by several tons, to be run over such track in such weather; and it is the contention of appellant that the tendency of the rejected testimony would have been to prove not only that defendant was negligent in the operation of such heavy engines over the light track, but that the breaking of rails at different places along the line, where the conditions were similar to

those at the place of accident, brought home to the defendant knowledge of the peril of such operation.   Taking the theory of plaintiff's action to be that the conditions generally—the paticular rail which in fact broke being but a factor therein—under which the train was being operated were negligent, and that the accident was the result of such negligence, we think the testimony offered was competent, and should have been admitted.   Generally speaking, proof that a particular rail was defective could not be made out by showing that other rails had become broken.   But another question altogether is presented when, as here, it is sought·to show by proof of repeated breakings that all the rails were defective, in the sense that they were insufficient in size and weight to bear up the engines and trains in use.   Certainly, if it should be

6. INJURY to made to appear that the rails in use were so
passenger: light, and the trains operated so heavy, that
defective
track: in extreme weather frequent breakings occur-
other de-
fects. red, notwithstanding which the defendant continued to so operate its road, there can be found very substantial reasons for saying that one injured by the derailment of a train caused by one of the rails becoming thereby broken could charge negligence, and, in making proof thereof, ought not to be restricted to the condition of the particular rail which happened to be the immediate cause of the accident.   The duty of the defendant was to construct and maintain a track sufficient for the operation of its trains thereover, and in this respect the highest degree of care was imposed upon it.   This is elementary. See 6 Cyc. 619, and cases cited.   Now, the charge made being that the track was not so constructed or maintained, we think that evidence of the breaking of rails at other near-by points on the line of the road, where the conditions generally were the same as at the point of the accident, was competent.   This has frequently been held, and we think the doctrine is based upon sound principle.   The

authorities giving sanction to the doctrine may be found collected in 5 Am. & Eng. Ency. 633.

As one ground of defense, the defendant pleaded a full settlement of the matter of damage alleged in the petition. It appears that the accident in question occurred February 9, 1899, and on the 11th day of the month plaintiff signed an instrument acknowledging payment of the sum of $100 in full satisfaction of all claims for damages growing out of her injury. Plaintiff, in her reply, says in respect thereto that she was at the time suffering from weakness of intellect and mental derangement caused by her accident and injury to such an extent that she was wholly unfit and incompetent to enter into any such agreement of settlement, and that, in point of fact, she was in such condition that she has no recollection whatever of entering into the same. On a careful review of the evidence, and having the assistance of the argument made by counsel upon this hearing, some evidence is disclosed tending to prove that plaintiff, at the time she signed the instrument in question, was so far mentally deranged that she did not comprehend the fact that a settlement was being made, or the character of the instrument she was signing. The defendant having offered testimony to the effect that she appeared at the time of the alleged settlement to be in possession of her mental faculties, we think the plaintiff should have been allowed in rebuttal, to have the benefit of an answer to the question propounded to the physician "as to whether persons that are insane, or have deranged minds, at some times appear to be sane, and talk practically sane upon subjects, and converse in practically a sane manner." The issue was squarely drawn as to the mental capacity of plaintiff, and, although the physician was allowed to subsequently answer a question bearing somewhat thereon, we think plaintiff was entitled to go into the subject fully; and

7. SETTLE-MENT for injury: mental incompetency: evidence.

this especially as it appears that the alleged agreement of settlement was procured within a few hours of the accident, and when plaintiff was confessedly undergoing much pain and suffering as a result of the accident.

Other questions argued are not likely to arise upon a new trial, and need not be here noticed. It follows from what has been said above that a new trial should have been awarded plaintiff, and, that such may obtain, the judgment of the trial court is REVERSED.