ROBERT MITCHELL v. THE CHICAGO, ROCK ISLAND and PACIFIC RY. CO., Appellant.

**Railways:** ASSUMPTION AS TO CARE. A railway company is bound to
1 exercise the highest degree of care in the operation of its trains, but where there is no evidence as to the condition of the headlight of an engine it may be assumed to have been in proper condition.

**Expert evidence.** How far an engineer can see by means of a head-
2 light, under given circumstances, is not so far a matter of knowledge and experience on the part of the jurors as to render expert evidence on the subject incompetent.

**Negligence in guarding standing cars:** EVIDENCE. Ordinarily a rail-
3 way company is held to the same degree of care in blocking cars stored on a passing track as when on a storage track, even though the appliances may be different; and where an accident occurs by reason of the fact that cars stored on a passing track ran out upon the main track, evidence that derailing switches are cus-

tomarily used on storage tracks and are usually left so that cars cannot pass; that passing tracks are not used for storage purposes, except in an emergency or when in a certain condition; that brakes of standing cars are usually set; that such cars are often blocked, and that the local agent is supposed to look after their safety, is admissible.

**Same.** Evidence that the storage of cars on an inclined side track without a derailing switch is dangerous; that such a switch is a common safety device; that brakes should be set on cars standing on an inclined side track and should be blocked, if convenient, is admissible as relating to what should be done in ordinary railroading.

**Same:** SUBMISSION OF CHARGE OF NEGLIGENCE. While a derailing switch may not ordinarily be used on a passing track, still where the evidence discloses the use of such track for storage purposes for such length of time that the jury might have found the company negligent in not so equipping the same, the charge of negligence in failing so to do should not be withdrawn from the jury.

**Same.** The question of whether an engineer saw freight cars which moved from a side track onto the main track, thus causing a collision, as soon as he should under the circumstances of the case, is held to have been for the jury.

**Same.** Where the engineer was advised of the number of cars stored on an inclined passing track, and the company knew that the track was not provided with a derailing switch, the question of negligence in moving the train at a high rate of speed and colliding with freight cars which had run out onto the main track was properly submitted.

**Damages for personal injury:** EARNING CAPACITY: EVIDENCE. While ordinarily a loss of profits cannot be shown for the purpose of determining the amount of recovery for a personal injury, still where the plaintiff was conducting his own business with but little assistance, never having received wages, the character of the business, amount of the time given to it and its returns, taken in connection with the capital employed, may be shown in proof of the party's earning capacity at the time of the accident.

**Same:** INSTRUCTIONS. Where there is both evidence of business profits and personal earnings, in relation to the damages sustained because of a personal injury, the jury should be directed to give no consideration on the question of profits save as the same tend to show plaintiff's earning capacity; but a party requesting instructions that confuse the questions of profits and earnings cannot complain of the court's omission to do so.

**Same:** EXCESSIVE VERDICT. The question of damage sustained by a personal injury is primarily for the jury, and where there is evidence in support of the verdict it will not be disturbed on appeal.

*Appeal from Davis District Court.*— Hon. C. W. Vermillion, Judge.

Wednesday, January 22, 1908.

Rehearing Denied, Monday, April 13, 1908.

The defendant appeals from a judgment awarding plaintiff damages for injuries received in a collision of defendant's train and certain cars on its track.— *Affirmed.*

*Carroll Wright, J. L. Parrish, McNett & McNett,* and *S. S. Carruthers,* for appellant.

*H. C. Taylor* and *Payne & Sowers,* for appellee.

Ladd, C. J.— Plaintiff was a passenger on defendant's train. It consisted of the engine, tender, and nine cars, and left Trenton, Mo., at 10:50 o'clock p. m. It was about forty minutes late, and had gained seven minutes before reaching Clio, Iowa. At that station there was a house track south of the main line, and a passing track north. The former was used to stand cars on when not in use, or to be loaded and unloaded. Trains backed on the latter to allow others to pass, and in cases of emergency cars were stored thereon. Owing to improvements being made, cars had been stored on the passing track during the three weeks previous, and on this evening some seventy-six cars were there, and in some way several gravel or ballast cars had run out on the main line to the west. The engineer did not observe these until within two hundred feet, too late to avoid a collision. Instantly he threw the air brake into an emergency, so as to " give the cars a chance to spread " and prevent them from telescoping,

with the possibility of clearing the track by the impact against the standing cars. Two or three of these were broken in pieces, but the engine was thrown from the track. The plaintiff was injured, and in this action bases his demand for relief on four allegations of neglect: (1) The operation of the passing track upon a grade without a derailing switch to prevent cars thereon from running on the main track; (2) the leaving of loaded and detached cars on the passing track without adequate brakes, or brakes set, or adequate precaution to prevent them from running on the main track; (3) permitting cars to be or run so near to or on the main track as to obstruct the same, or be at the place of collision; and (4) failure of defendant's employés in operating the train to observe the cars on the track in time to avoid the collision, and operating it at an excessive rate of speed, without having it under control.

The evidence left no doubt but that plaintiff was injured by reason of the derailment of the engine, and this cast the burden of proof on the defendant to show that the collision occurred, notwithstanding the exercise by it of the highest degree of care consistent with the practical operation of its road. *Whittlesey v. Railway,* 121 Iowa, 602; *Cronk v. Railway,* 123 Iowa, 354. The gravel cars were out on the main track, and in exculpating itself from the charge of negligence to be inferred from the accident the defendant necessarily undertook to explain how this happened, and that with the cars there the engineer could not, in the exercise of the care required, have seen the cars in time to have avoided the collision. See *Jones v. Railway,* 178 Mo. 528 (77 S. W. 890, 101 Am. St. Rep. 434). Many of the exceptions saved relate to evidence introduced by plaintiff to meet such explanation.

I. One Durflinger testified that an engineer in ap-
1. RAILWAYS: proaching the switch could have seen gravel
assumption
as to care. cars on the main track from a point six hundred and twenty-five feet west of the switch, and that his

ability to see would depend on the proper adjustment of the headlight, on the weather and the eyesight, and that in such a night as that in question, with the lights properly equipped and adjusted, he could have seen close to a quarter of a mile. In so far as the competency of the witness is discussed the argument is not pertinent, for no such objection was interposed. The witness did not undertake, as is assumed in argument, to say what would be the proper adjustment of the light, but expressed his opinion, based on its proper adjustment. As the defendant was required to exercise the highest degree of care, it was not too much to assume that conditions were such as it was bound to have them.

Nor is the suggestion sound that the inquiry was so far a matter of common knowledge as not to be the subject of expert evidence. How far a person could see, under the circumstances, was so far out of range of the information and experience of an ordinary juror as to render the testimony of persons familiar with the subject competent.

**2. EXPERT EVIDENCE.**

II. Objection was made and overruled to evidence that derailing switches are customarily used on house tracks, especially in defendant's system; that they are ordinarily left so that cars cannot get past; that passing tracks are seldom if ever used for storage of cars, save in event of accidents, and when the side track is on an incline; that the brakes of the cars should be set, and, in the absence of a derailing switch, that the cars are often blocked by pieces of wood under the wheels; and that in these circumstances the local agent is supposed to look out for these cars. This evidence was rightly received as explaining precautions necessary to be taken in the use of the house track for the reception and storage of cars. The passing track was not customarily used for that purpose. It was a side track, however, and when used for the storage of cars any considerable length of time it is difficult to understand why precautions equivalent or similar to those taken to guard

**3. NEGLIGENCE IN GUARDING STANDING CARS: evidence.**

the cars left on the house track ought not to be taken for protection of trains on the main track. The evidence tended to show that the passing track had been 'used for the storage of cars about three weeks, while certain improvements in the vicinity of the station were being made; and, as bearing on the issue of negligence, it was competent to show what precautions were usually taken in caring for cars placed on side tracks, customarily used for the storage of cars, regardless of the name by which these were designated. Everything else being equal, it would seem there should be the same degree of care exercised in guarding cars stored on the passing track that should be given to those on the house track, even though the same appliances be not used. The evidence was admissible.

III. One Shelton was allowed to testify over objection that the storage of cars on a side track which is on an incline without a derailing switch would be dangerous; that the derailing switch was a common safety device in proper railroading; and that, in leaving a car on an incline, the brakes should be set; and, if a chunk is handy, it should be blocked. The evidence was admissible, as it related to what should be done in ordinary railroading. While perhaps the witness ought not to have been asked whether to do a thing in a certain way would be dangerous, yet this amounted to no more than inquiring whether this would be proper railroading under the circumstances.

4. SAME.

IV. Error is assigned in that the court did not withdraw the charge of negligence in failing to make use of the derailing switch on the passing track. Ordinarily the derailing switch is not employed on such tracks, but it appears from enough evidence to have warranted the jury in so finding that the passing track is never used, save in event of accidents, for the storage of cars. The mere name by which the track is designated is immaterial. The jury might have found that notwithstanding the name this passing track had been

5. SAME:
submission
of charge of
negligence.

used in the manner of house tracks for the three weeks previous to the accident, and because of such use the jury might have concluded that the defendant was negligent in not taking the same precautions, or doing something equivalent thereto, for the protection of passing trains.

V.  Error is also assigned because the court did not withdraw the charge of negligence against the engineer in failing to observe the obstruction in time to avoid the collision.  The evidence was such as to fairly take

6. SAME.

this issue to the jury.  We concur in all that is said of the courage and coolness and discretion of N. E. Sherwood, the engineer, at a time when all these qualities were so necessary to save the lives of those who had placed themselves in his keeping.  The record presents an example of heroic bravery and fidelity to duty on his part, worthy of the highest commendation.  He did all that was possible to do, after seeing the cars on the tracks; but did he observe them as soon as he should under the peculiar circumstances of this case?  That question was for the jury to decide.

VI.  Defendant takes exception to submitting to the jury the issues with respect to the use of the derailing switches, and the consideration of the passing track on an incline, and the speed of the train.  These

7. SAME.

matters were brought to the atttention of the jury, in connection with the storage of cars on the passing track, and the care which should be given to prevent them' running onto the main track, and to avoid a collision therewith.  They were not submitted as independent grounds of negligence, only as such in view of the use made of the track.  Ordinarily railroads may operate their passenger trains at any rate of speed consistent with the safety of passengers.  Here, however, the engineer had been advised that there would be seventy-six cars on the passing track, and the company knew the condition of that track, and that it was being used as a house track, without being provided with a derailing switch.  Whether, under these circumstances, in

approaching the station, the engineer should have kept his train under control, and especially an intent outlook for obstructions, were for the jury to say. It is true that the crew is advised in advance of the number of cars on the passing track, so as to guard against the use of that track in passing another train; but with the large number of cars at this small station, it was not too much to require that the engineer take some precaution for the protection of the passengers in passing it.

VII. On redirect examination plaintiff was asked: "About what amount of money had you been making each year prior to December the 7th when you received that in-

8. DAMAGES FOR PERSONAL INJURY: earning capacity: evidence.

jury — say the last ten years? (Defendant objects to the question as incompetent, immaterial, too general, not the proper measure of damages. Overruled, and defendant excepted.) A. Why, I generally run right around about a $1,000. Q. At the time you were married, what amount of property did you have? (Defendant objects as incompetent, immaterial, not the proper measure of damages. Overruled, and defendant excepted.) A. Three hundred dollars worth, I think. Q. Now what property have you accumulated since you were married, up to December 7, 1904? (Defendant makes the same objection. Overruled, and defendant excepted.) A. Well, I should judge I have right around $5,000 or $6,000 worth; something like that." The loss of future profits in plaintiff's business could not be taken into account in estimating the damages he had suffered. *Jordan v. Railway Co.,* 124 Iowa, 180. And evidence of past profits was not admissible as tending to show what his profits in the future would be likely to be, but for the injury. *Masterson v. Mt. Vernon,* 58 N. Y. 391; *Bierback v. Goodyear,* 54 Wis. 208 (11 N. W. 514, 41 Am. Rep. 19); *Goodhart v. Railway,* 177 Pa. 1 (35 Atl. 191, 55 Am. St. Rep. 705); *Silsby v. Mich. Car Co.,* 95 Mich, 204 (54 N. W. 761). It does not follow, however, that proof of the character of business the per-

son injured has been engaged in, and the amount of his yearly accumulations for a considerable period prior to the injury, when these mainly are due to his personal efforts, may not be shown for some other purpose. Often his earning capacity in the past can be proven in no other way. Where the party injured has worked for wages or on salary, evidence of the amount received is uniformly admitted. *Sachra v. Manilla*, 120 Iowa, 562; *Stafford v. Oskaloosa*, 64 Iowa, 251. But plaintiff always had conducted a business of his own, attending to it personally and without any considerable assistance, and had never received wages. In such a case, how shall the financial loss due to the impairment of the earning capacity be shown? Quite naturally, as was done in the case at bar, by proving the character of the business, the amount of time given to it, what the returns had been, and from these, in connection with the capital invested, a fair idea of the party's earning power at the time of the accident may be inferred. Such evidence indicates the character and value of the service the party was capable of rendering immediately before the injury, precisely as proof of employment at some occupation at wages or a salary would have done. Of course, the fact that some capital is made use of is an important consideration, and must be taken into account in determining the earning power; and, on the other hand, the recognized fact that the earning capacity of a man operating his own business ordinarily is greater than that of an employé in the same line of service should not be overlooked. The object of such evidence is to show the capacity to earn values, and for this purpose it is quite as pertinent to the issue, even though not as definite as proof of wages or salary. The word "earnings" means the fruit or reward of labor — the price of services performed. *Pryor v. Railway*, 85 Mo. App. 367, 371; *Goodhart v. Railway, supra.* "Profits" represent the net gain made from an investment, or from the prosecution of some business. Webster's dictionary defines the word as "acquisition beyond

expenditure; excess of value received for producing, keeping, or selling over cost; hence pecuniary gain in any transaction or occupation." *Mundy v. Van Hoose,* 104 Ga. 292 (30 S. E. 783, 786); *Curry v. Charles Warner Co.,* 2 Marv. (Del.) 98 (42 Atl. 425, 428). Manifestly, when the profits of a business depend solely on the personal efforts of him` who prosecutes it, they form an accurate measure of his earning capacity; but, when capital also is required, this must be taken into account, and his power to earn money may be inferred, though with approximate accuracy only.

The difficulty in the proof, however, furnishes no ground for the rejection of the best evidence attainable in establishing one of the elements for consideration in determining the damages to be allowed — the impairment of the earning power. The rule is well stated in 3 Sutherland on Damages, section 945: " Evidence of the loss sustained by the plaintiff in his business in consequence of the injury received is proper, not as furnishing the measure of damages, but to aid the jury in estimating them, and for this purpose the nature of such business, its extent, and the importance of his personal oversight and superintendence in conducting it may be shown." In *Wallace v. Railway,* 195 Pa. 127 (45 Atl. 685, 52 L. R. A. 33), the court held it " competent to show the profits of plaintiff's business as a measure of her earning power," saying: " Profits derived from capital invested in business cannot be considered as earnings, but in many cases profits derived from the management of a business may properly be considered as measuring earning power. This is especially true where the business is one which requires and receives the personal attention and labor of the owner." *Goodhart v. Railway, supra,* was distinguished as merely deciding that profits may not be proven in order to be taken into consideration as such. In *Chicago, R. I. & P. R. Co. v. Posten,* 59 Kan. 449 (53 Pac. 465), the court in holding such evidence admissible, said: " It is not alone wage earners whose time is valuable, and who may recover damages

for injuries resulting in the loss of it.    In order that the jury
may intelligently estimate the loss the plaintiff has sustained
it is necessary that they should be informed with reference
to his business affairs; and while they may not as compensa-
tion for the loss of his time, include speculative profits, or
profits on invested capital, it is for them to say what loss has
resulted to his business because of his being incapacitated
from attending to it, and to award him as damages the value
of his time and labor to himself in the transaction of his own
business.    This is the same recovery, and for precisely the
same reasons, that a clerk or agent doing the same work for
wages might recover for his loss." In *New Jersey Express
Co v. Nichols,* 33 N. J. Law, 434 (97 Am. Dec. 722), the
rule is laid down that, " in actions of tort, where the quan-
tum of damages is very much within the discretion of the
jury, evidence of the nature and extent of plaintiff's business,
and the general rate of profit he has realized therefrom, which
has been interrupted by defendant's wrongful act, is properly
received, not on the ground of its furnishing a measure of
damages to be adopted by the jury, but to be taken into con-
sideration by the jury to guide them in that discretion which
to a certain extent is always vested in the jury."

The question is fully discussed in *Heer v. Warren
Scharf Asphalt Paving Co.,* 118 Wis. 57 (94 N. W. 789),
where the court, conceding that profits of business may not be
considered by the jury as a measure of either the injured
party's earning power, or his damages from personal im-
pairment, held that " it is competent to prove the magnitude
of the profits therein (in the business described), not that the
jury is to allow any loss of such profits as damage, but to
consider them with other elements as descriptive of the
amount and grade of the services of which the injured man
was capable.    When that is ascertained, the jurymen are to
apply their judgment and common knowledge in deciding
what money earning capacity results from the ability to ren-
der such services."    The dissenting opinion in that case seems

to proceed on a misconception of the purpose of such evidence, but serves well to emphasize the distinction we have attempted to point out. In *Homan v. Franklin Co.,* 90 Iowa, 185, such evidence was held inadmissible on the theory that loss of future profits was sought to be proven as an element of damages. In *Lund v. Tyler,* 115 Iowa, 236, testimony of what the person injured had been earning in fishing was held to have been rightly received, as " the business was one involving, not speculative profits, but mainly the personal efforts of the plaintiff, the profits in which could be shown as resulting in loss of earnings." In *Jordan v. Railway,* 124 Iowa, 177, receiving evidence of what the plaintiff's profits had been in the business of buying and selling cattle was approved. The decisions agree that profits lost may not be proven as a measure of or criterion for the estimation of damages in such cases, and when read solely with reference to the question involved, we think there is substantial unanimity in the opinions that proof of profits in a business pursued by the injured person, mainly dependent on his personal exertions, are admissible as tending to show what his earning power was prior to the injury, to the end that the jury may be the better able to rightly estimate what compensation should be allowed for its impairment. There was no error in admitting the evidence.

VIII. The seventeenth instruction given authorized the jury to include compensation in determining the amount of damages to be allowed, " for such future disability . . . as the evidence shows it is reasonably certain will result." This was correct, but not as specific as it might well have been, in view of the evidence to which we have referred. The attention of the jury was not specifically directed to the purpose for which the evidence was received. The twenty-seventh instruction, requested by defendant and refused, though making the distinction between accumulations from personal service and those accruing from business and rents, not only omitted any

9. SAME:
instructions.

direction as to the rejection of the latter from consideration, but plainly intimated that both were to be taken into account; for the court was asked to tell the jury to consider " whether plaintiff's yearly accumulations have arisen in whole or part from his personal or physical labor, or whether they have arisen in part from the business he has been conducting from the use or rentals of his farms, and then determine from these and all other facts in evidence to what extent, if at all, you believe his earnings or accumulations will be diminished by reason of any impairment of his physical condition, which you may find he has sustained from his alleged injuries." And in an instruction given at defendant's request the matter was touched upon in a manner which must be assumed to be as it desired.  " If you find from the evidence that the plaintiff's accumulations for the past years have arisen largely or partially from his management of business, the renting of his farms, and other sources, not involving larger physical or mental exertion than he is capable of making, and that it is probable that he will not be able to continue such business and operations in the future of his life, then you should take these facts into your consideration, and give them their due weight in estimating the damages, in case you find for the plaintiff."  Having requested instructions confusing rather than distinguishing these matters, appellant cannot be heard to complain of the court's omission on its own motion to caution the jury to exclude from their consideration profits save as these tended to show plaintiff's personal earning capacity.  Moreover, in the absence of a request the court is not bound to specifically instruct with reference to the bearing of the different items of evidence adduced, and this rule is applicable to the case at bar.  *Heer v. Warren Scharf Asphalt Paving Co., supra.*

IX.  Lastly, it is argued that the verdict is excessive. The record presents contradictions often found in this class of cases.  If the injuries were such as indicated by the evidence in behalf of plaintiff, the amount cannot be re-

garded as excessive; if as represented by the witnesses called
**10. SAME:** by the defendant, plaintiff's troubles are
*excessive verdict.* largely imaginary. The credibility of the several witnesses was for the consideration of the jury, and we are not inclined to interfere with its conclusion.— *Affirmed.*