W. A. ALITZ, Appellee, v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY, Appellant.

**RAILROADS:** Accidents at Crossings—Smoke-Obscured Track.  Contributory negligence *per se* is not established by a showing that a traveler, after looking and listening, entered upon a railway crossing at a time when the track along which a train was approaching, without warning signals, was obscured by smoke.

**EVIDENCE: Opinion Evidence—Safety of Attempted Crossing.** A witness who has testified to the acts of precaution taken by him before going upon a railway crossing may very properly be permitted to testify that he went upon the crossing *because he considered it safe to do so.*.

**EVIDENCE: Opinion Evidence—Neutralizing Opinion.** A competent opinion as to the speed of a train is not neutralized by a concession on the part of the witness that he does not *know* how fast the train was moving.

**DAMAGES: Measure—Injury to Person—Lessened Earning Capacity.** In an action for personal injury, evidence is proper as to the earning capacity of the injured party before and after the injury.

**APPEAL AND ERROR: Parties Entitled to Allege Error—Estoppel by Delay.** Any error in the jury's failure to answer special interrogatories is waived by the failure of the aggrieved party to object when the general verdict is returned.

**TRIAL: Special Interrogatories—Nonultimate. Fact Question.** In a personal injury action, the court need not submit interrogatories as to the amount of damages allowed (1) for loss of time and earnings, and (2) for future loss of time and earnings; and if such interrogatories be submitted, it is not reversible error to accept a verdict which is not accompanied by any answers to said interrogatories.

**TRIAL: Instructions—Indefinite Exceptions.** Specifications of error in instructions will be wholly ignored when they are so general as to require the court to hunt through the record and itself frame the objections.

**RAILROADS: Accidents at Crossings—Reliance on Signals.** A traveler, in approaching and going upon a railway crossing, may place *some* fair and reasonable reliance on the supposition that the railway company will not operate its trains over the crossing without giving the statutory warning signals.

*Appeal from Cerro Gordo District Court.—J. J.* CLARK, Judge.

MAY 8, 1923.

REHEARING DENIED SEPTEMBER 28, 1923.

ACTION at law, to recover damages for personal injury. Verdict and judgment for plaintiff. Defendant appeals.— *Affirmed.*

*C. H. E. Boardman,* for appellant.

*D. W. Telford, F. A. Ontjes,* and *D. H. Fitzpatrick,* for appellee.

WEAVER, J.—A highway extending east and west crosses the parallel lines of the defendant railway company and the Chicago Great Western Company, extending north and south, and about 100 feet apart, the defendant's line being the one on the east. Plaintiff lived west of these crossings, and was familiar with their character and location. On September 17, 1917, plaintiff, driving an automobile from the north, entered upon the east and west road 274 feet east of defendant's crossing, going west in the direction of his home. He appears to have been alone in his car. According to his testimony, as he approached from the east in the direction of the defendant's crossing, he looked both ways, to see that the track was clear, and listened to hear signals, if any; and, as he drew nearer, a train from the north moved south on the Great Western line. When first seen, this Great Western train was about 35 rods north of the crossing. This train left a trail of smoke which the air current appeared to drift or spread to the northeast, obscuring the defendant's line north of the crossing, but leaving the crossing itself clear. When within seven rods of the crossing, he looked and listened again; but, discovering no sign or signal indicating any train on defendant's track, and believing that the way was safe, he undertook to cross; and while he was in the act, his car was struck by a train moving south on that line, resulting in the practical destruction of the car and injuries to his person of a very grave character. He charges the collision to the fault and negligence of defendant's trainmen in operating the train at a dangerous and reckless speed; and in failing to sound a whistle or ring a bell to give warning of the approach to the crossing, and avers that he was himself in the exercise of due care.

Defendant denies the petition, and alleges that plaintiff's injuries are properly chargeable to his own negligence. As we have noted, it is plaintiff's claim that he approached the crossing in the exercise of care; that he looked and listened; that no signal of whistle or bell was sounded; and that the approach of

the train was concealed or obscured by the smoke. Several other witnesses corroborate his denial of crossing signals, though the trainmen testify that they were given. The corroborating witnesses were not immediately at the crossing, but at various points in the neighborhood. They say that the day was cloudy and "drizzly." They describe the smoke as a "heavy volume," a "heavy smoke," and say that it tended to drift to the northeast. Another says that the day was "damp and foggy." Defendant's engineer did not discover the plaintiff until almost the instant of the contact. The fireman saw him when perhaps 300 feet distant, but did not realize that he was going upon the crossing ahead of the train. The brakes were applied at once, but a stop was not effected until the train had overrun the crossing about 350 feet.

Appellant does not contend that the evidence of its alleged failure to signal for the crossing was insufficient, as a matter of law, to take that question to the jury, but it argues with much force and earnestness that the record conclusively establishes the plaintiff's contributory negligence, which bars his claim for damages. At the conclusion of the plaintiff's evidence in chief, defendant presented a motion for a directed verdict in its favor, which was denied. This motion was renewed when both parties had rested, and was again overruled. Defendant also presented twelve requests for instructions to the jury, all of which were refused.

With its charge to the jury, the court submitted two interrogatories: the first asking the amount of damages, if any, allowed plaintiff for loss of time and earnings; the second, the amount allowed, if any, for future loss of time and earnings. There was a general verdict for plaintiff, assessing his recovery at $6,109.35, no answer being returned to the special interrogatories.

The case is one of the familiar type in which a collision occurs on a public crossing between a railway train and a traveler on the highway, and negligence of the railway company is charged as the proximate cause of the resulting injury. The general rules of law applicable to such controversies have been so frequently stated and defined, and the pertinent authorities so frequently collated, reviewed, and passed upon, that we ought

not to and shall not attempt to re-enter the field of their original discussion, but confine our attention to the application of the law, as so settled, to the facts and circumstances of the particular case presented by this record. This can best be accomplished by coming directly to the assignments of error on which the appellant relies for a reversal.

I.  The first and principal contention of the appellant is that the plaintiff is conclusively shown to be chargeable with contributory negligence as a matter of law, in that, if it be true, as he claims, that his view of the approaching train on defendant's track was obscured by the smoke from the train on the Great Western track, then it was his duty to stop or delay his attempt to cross until the temporary screen or obstruction so created passed away, giving him a clear view and rendering the crossing safe; and that failure to take this precaution was contributory negligence. That failure to exercise such care and caution may constitute negligence may readily be admitted, but that admission does not quite cover the point made by counsel. To have done as suggested would, of course, have served to prevent the collision and avoid the injury; but the pertinent inquiry is whether, in view of all the circumstances as they were known, or should have been known, to the plaintiff, his act in driving upon the crossing was reasonably consistent with the care and caution which mark the conduct of persons of ordinary prudence. If this may be answered in the affirmative, then he is not to be conclusively held negligent, even though the result demonstrates that he could have insured his safety by waiting until he was certain that the crossing was safe. In our judgment, the danger to which plaintiff exposed himself by attempting the crossing was not so clearly imminent that, under all the circumstances, a jury of fair-minded men could not have found that he was exercising ordinary care and prudence. The question thus presented is not to be answered or determined from the simple fact of the collision, divorced or separated from its attendant circumstances. If, for instance, the jury should believe from the evidence, as it was authorized to find, that the smoke did obscure plaintiff's view of the track, and that such obscurity was accentuated by cloudy, misty, or foggy weather, and that the approaching train was

1. RAILROADS: accidents at crossings: smoke-obscured track.

being operated through this screen at a high rate of speed, without sounding the proper crossing signals, then a finding by the jury that plaintiff's act in attempting the crossing was consistent with reasonable care on his part could not be set aside, as having no support in the record. Such conclusion is not at all inconsistent with the precedents cited by appellant, where the simple fact that the presence of smoke or steam obscures the traveler's vision has been held insufficient to excuse a rash attempt to make a crossing.

II.   Exceptions are preserved to the court's rulings upon matters of evidence.  Referring to them in a general way, counsel for appellant says that they are insignificant, compared with

2. EVIDENCE: opinion evidence: safety of attempted crossing.

other questions raised by the appeal, and that all are represented by an unjust verdict, unwarranted by the record.

Complaint is made that plaintiff, as a witness, having described his approach to the crossing, the obscurity alleged to have been created by the smoke, and his efforts to see, hear, and ascertain whether the track was clear, was permitted to say that he undertook the crossing because he believed or thought that the way was safe.  The objection to the evidence is not well taken.  True, as counsel say, "the material thing was whether he had a right to think he could cross in safety;" but it was not immaterial for the jury to consider whether he acted in the honest or reasonable belief in the safety of the crossing, or plunged ahead in reckless disregard of the dictates of prudence.

Complaint is also made that one of plaintiff's witnesses was permitted to state his estimate of the speed of the defendant's train at 50 miles per hour.  The witness qualified by saying that

3. EVIDENCE: opinion evidence: neutralizing opinion.

he had observed and was familiar with the speed of locomotives and trains, and said that he should "judge this train was going about 50 miles per hour."  On cross-examination, he was led to say: "I don't know it was running 50."  The witness did not pretend to give any mathematically exact statement of the speed.  He expressed his judgment to be that the train was moving "about 50 miles an hour;" and such testimony was not rendered incompetent by his concession that he did not "know" it was 50 miles.

Plaintiff was permitted to show also that, at and prior to

the time of his injury, he was conducting a farm of 240 acres, and was earning between $1,500 and $2,000 per year; that since such injury he had, with hired help, worked 80 acres, earning $250 to $500. This evidence is objected to, as affording no competent basis for the recovery of damages; and in this connection, it is further objected that the court, by its charge to the jury, permitted a recovery as for the loss of "profits." This objection does not fairly state the position of the trial court. It is true that the court permitted plaintiff to testify to the nature of his business and extent of his earnings before his injury, and the manner and extent to which his earning capacity was affected or diminished by such injury; but, in its charge to the jury, the court said that, in case of a verdict for plaintiff, it was competent for the jury to include in the damages assessed, the hospital, nursing, and doctor's bills reasonably incurred, also, the reasonable value of his loss of time and earnings in his business as a farmer, but "not for profits as such, though these may be considered in connection with the amount of land he was farming, the persons employed, and the expenses and net income before and after his injury, with the amount of his own time and attention thereto, in order to determine how much his earnings from his own services in his business were worth, and the loss he has suffered as the proximate result of his injury." There is nothing in this evidence or in the instruction of which the appellant can justly complain. The justice and propriety of such rule have often been recognized. See *Escher v. Carroll County,* 146 Iowa 738; *Jordan v. Cedar Rapids & M. C. R. Co.,* 124 Iowa 177; *Kinney v. Crocker,* 18 Wis. 80, 82; *Hanover R. Co. v. Coyle,* 55 Pa. 396; *Simpson v. Pennsylvania R. Co.,* 210 Pa. 101 (59 Atl. 693); *Burns v. Dunham C. & H. Co.,* 148 Cal. 208 (82 Pac. 959); *Chicago, R. I. & P. R. Co. v. Posten,* 59 Kan. 449 (53 Pac. 465); *Chicago, R. I. & P. R. Co. v. Scheinkoenig,* 62 Kan. 57 (61 Pac. 414); *Markowitz v. Metropolitan St. R. Co.,* 3 Misc. Rep. 175 (63 N. Y. Supp. 961); *Mitchell v. Chicago, R. I. & P. R. Co.,* 138 Iowa 283, 290.

It is assigned as reversible error that the jury failed or neglected to answer the special interrogatories. The objection is not well taken, for at least two sufficient reasons. In the first

*4. DAMAGES: measure: injury to person: lessened earning capacity.*

place, had the defendant desired to raise the ob-
jection, it should have done it when the general
verdict was returned into court with the inter-
rogatories unanswered, when, had the court
deemed it material, it could have ordered the matter resubmitted
to the jury, requiring answers to be made. No objection was in
fact raised until several days after the verdict had been received
and the jury discharged. This was not in time. *Mayo v. Halley,*
124 Iowa 675, 680. But, irrespective of the delay in objecting,
it is to be said that the court might properly have refused to
submit the interrogatories at all, and there was
no error in not requiring their answer. The jury
was under no duty or obligation to find or assess
separate and distinct items of damages for past time lost or for
impairment of plaintiff's future earning capacity. If plaintiff
was found entitled to recover for personal injuries, the jury was
not called upon to make a separate allowance of damage for
each separate hurt or wound or bruise, but to consider his gen-
eral physical condition, as affected by all his injuries fairly
attributable to the negligence of which he complains, and assess
his damages in a single sum.

III. Further error is charged upon the court's refusal to
submit requested instructions, and upon instructions given by
the court upon its own motion. We have examined these with
care. Many of the objections are stated in such
general terms that, under our present statutes
and rules of practice, they cannot be considered. For example,
many of the exceptions taken are in the following form:

"First. The verdict is contrary to law, contrary to the
evidence, and contrary to the instructions of the court. Second.
The verdict is excessive, and the result of passion and prejudice.
Third. The court erred in overruling defendant's motion to
instruct the jury to return a verdict for the defendant, and in
overruling defendant's motion to strike from the record all
evidence as to removal of certain parts from the automobile, and
testimony as to what the plaintiff had earned while conducting
a farm, before and after the injury complained of. Fourth.
The court erred in admitting in evidence, over defendant's
objection, testimony offered by the plaintiff, and in not sustain-

5. APPEAL AND
ERROR: parties
entitled to allege
error: estoppel
by delay.

6. TRIAL: special
interrogatories:
nonultimate fact
question.

7. TRIAL: instruc-
tions: indefinite
exceptions.

ing defendant's objection thereto, all as shown by the record of the shorthand reporter, duly filed in this cause. Fifth. The court erred in excluding evidence offered by the defendant, and in sustaining plaintiff's objection thereto, and in not admitting such evidence in the record, all as shown by the shorthand notes of the reporter, duly filed in this cause. Sixth. The court erred in not giving to the jury the instructions requested by the defendant, numbered I to XII, inclusive, and in refusing to give said instructions, all as shown by the record in this cause. Seventh. The court erred in giving to the jury its instructions numbered I to XV, inclusive, to the giving of which instructions the defendant duly excepted at the time.''

That such exceptions are manifestly insufficient has often been held, and such is the express provision of the statute. See Chapter 24, Acts of the Thirty-seventh General Assembly.

Of the exceptions which may be considered as sufficient in form, it is to be said that, in so far as the legal propositions relied upon correctly state the law, they are fully and fairly covered by the court itself, in the charge as given. For example, it is the contention of counsel that the speed of the train was not, in itself, evidence of negligence; that plaintiff could not rightfully rely on the train's approach at any particular speed; that the traveler approaching a crossing is not entitled to indulge in nice calculations or enter into any contest of speed to be first at a crossing; and that it is his duty to look and listen, to ascertain if the track be clear. But the court did carefully charge the jury with respect to these and other related circumstances. In most respects, these instructions are quite like those which counsel contend for, except that counsel insist, at nearly every turn, upon ingrafting upon them some qualifications to the effect that all these questions are to be resolved against the appellee as matters of law, while the court's charge leaves each inquiry open, as a matter of fact, for the jury. In this we think the court was right.

IV. Other points made in criticism of the charge involve propositions which are not the law. For example, it is argued, and the court was asked to charge, in substance, that the traveler at a railway crossing has no right to place any reliance upon the duty of the

8. RAILROADS: accidents at crossings: reliance on signals.

railway company to give the statutory signals. This is not the
law. It is true, as we have held over and over again, that the
absence of the signals will not justify the traveler in failing to
use ordinary care to avoid any collision on the crossing, but he
is justified in assuming that the railway company will at all
times make an effort to perform the requirements of the law.
Not that it justifies him in failing to make reasonable use of his
own faculties, but, to say the least, it has a legitimate bearing
upon the question whether he did act with the reasonable care
of an ordinary person, and it is usually sufficient to take the
question of contributory negligence to the jury. See one of the
latest pronouncements of this court on the subject in the opinion
by Faville, J., in *Johnson v. Omaha & C. B. St. R. Co.,* 194 Iowa
1230. In the cited case, it was also thought to be a material
circumstance to be considered, that the air was filled with float-
ing dust, and that the speed of the train was not slackened as
it approached the crossing.

V. Again, it is said that the court charged the jury, in
effect, that plaintiff could recover if the train was operated at
50 miles per hour, and that plaintiff could rely on its not being so
operated. We are sure that counsel would not intentionally
misrepresent or misinterpret the language of the trial court, but
the natural zeal and bias of the advocate have led him into error
in this respect. The trial court does not at any point so hold, nor
could any fair-minded, intelligent juror so understand the
charge. On the contrary, the jury was told that, "outside of
the limits of cities and towns, there is no particular rate of speed
that can be regarded in itself as negligence;" and again they are
told that "plaintiff could not rely upon the defendant's running
its train at any particular rate of speed." This thought is
repeated in one form or another many times; but the court
rightfully held and charged that, notwithstanding the absence
of any specific limit on the speed of the train, yet if, by reason
of obstructions to the view and other proved circumstances at-
tending a crossing, it appears that an excessive rate of speed at
such point is calculated to render the use of the crossing at
high speed inconsistent with reasonable care for the safety of
the public passage, then such excessive speed may be a factor

tending, with the other circumstances, to sustain the charge of negligence.

The charge of the court was evidently prepared with much care, and in our judgment it is not open to any serious criticism in its treatment of the issues tried. The vital question in the case is, as suggested by appellant, upon the subject of contributory negligence,—a question which, under all ordinary circumstances, is one of fact, and not of law; and we do not find anything in this record which requires us to hold it to be an exception to the rule.

The judgment of the district court is, therefore,—*Affirmed.*

PRESTON, C. J., STEVENS and ARTHUR, JJ., concur.

DE GRAFF, J., takes no part.