**IOWA–DES MOINES NATIONAL BANK,** Executor of the Estates of James V. Hauser and Ellen V. Hauser, deceased, Appellee,

v.

**SCHWERMAN TRUCKING CO. and** Dean R. Sayre, Appellants.

No. 62992.

Supreme Court of Iowa.

Jan. 23, 1980.

Richard G. Santi of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellants.

Lex Hawkins and Glenn L. Norris of Hawkins & Norris, Des Moines, and William N. Dunn of Dunn Law Firm, Eldora, for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McGIVERIN, and LARSON, JJ.

REYNOLDSON, Chief Justice.

This is a wrongful death case in which liability was admitted.

On August 28, 1975, a truck owned by defendant Schwerman Trucking Co. and driven by defendant Dean R. Sayre collided with an automobile occupied by James V. Hauser and his wife, Ellen V. Hauser, killing them instantly. Following a trial on damages the jury brought in a $327,835.83 verdict for the James V. Hauser estate and a $120,186.10 verdict for the Ellen V. Hauser estate. Defendants appeal and we reverse and remand for new trial.

James and Ellen were both fifty-one years old at the time of their deaths. They were survived by three adult children: Andrew, age 26; Catherine, age 24; and Mary, age 19. Both James and Ellen were reared in Eldora, Iowa. James attended Iowa State for two and one-half years, majoring in electrical engineering. After military service he returned to Eldora in 1947 to work in his father's feed store. In the same year he married Ellen, who had graduated from Grinnell College and had taught in the Newton school system in the 1946–47 school term.

In 1951 when James bought his father's interest in the feed business it had a $36,000 net worth. Under his direction the enterprise expanded and diversified rapidly. In 1963 it was incorporated as International Supply Company (ISC), apparently to permit earnings to be retained for expansion at a lower tax rate.

By the time this tragedy occurred, ISC was engaged in feed manufacturing, had a monopoly on the elevator business in Eldora, and was involved in the production of swine breeding stock. James and Ellen owned 87 percent of the stock; the remaining shares had been given to the three children. James served as president and manager of the corporation, Ellen as secretary. They received salaries for these services. They also had other sources of income from various investments and holdings: an apartment building; the Brickman Farm Corporation, in which Ellen was a shareholder by gift and served as corporate bookkeeper; and some interest income.

There was much evidence from which the jury could have concluded both decedents were enterprising, ambitious, morally upright, responsible parents and community leaders. They displayed good business judgment and lived conservatively. James was an innovator and a nationally recognized leader in his business. His time, attention and managing talent were devoted to the day-to-day operations of ISC.

Plaintiff's expert appraised the fair market value of ISC as of the date of deaths at $255,000. For federal estate tax purposes Internal Revenue Service valued the decedents' stock at $249,246, making the total corporate stock value approximately $286,020. The corporation then was employing thirteen persons in addition to the decedents.

By the time James and Ellen were killed they had paid for the college educations of Andrew and Catherine, who were both self-sufficient. Mary was beginning her sophomore year at the University of Iowa. Decedents had been paying her annual college expenses, estimated at $4500 to $4700 per year.

In this appeal defendants assert that (1) trial court erred in permitting plaintiff-executor to introduce evidence of anticipated increases in the net worth of ISC on the element of lost accumulation to decedents' estates; (2) an instruction on the element of lost earning capacity erroneously permitted the jury to consider evidence of future loss of profits; (3) trial court erred in permitting the jury to consider loss of services as an element of damages, erred in failing to give defendants' requested instruction thereon, and in any event the amount awarded was excessive; (4) trial court erred in failing to grant a new trial following an alleged prejudicial remark made by plaintiff's counsel during closing argument; (5) trial court erred in failing to grant defend-

ants' motion for directed verdict based on plaintiff's failure to prove decedents' level of personal consumption expenditures; (6) trial court erred in not permitting defendants to show the wrongful death awards would not be subjected to state inheritance or federal estate taxes; (7) the verdicts were excessive and based upon passion and prejudice; and (8) the cumulative effect of the assigned errors was denial of a fair trial and verdicts which failed to render substantial justice.

I. *Admissibility of evidence of anticipated increases in net worth of closely held corporation.*

 One of the elements of damage in a wrongful death action is the present worth or value of the estate which decedent would reasonably be expected to have saved and accumulated as a result of his or her efforts between the time of death and the end of his or her natural life had he or she lived. *Haumersen v. Ford Motor Co.,* 257 N.W.2d 7, 16–17 (Iowa 1977); *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632, 661 (Iowa 1969); *Brophy v. Iowa-Illinois Gas & Electric Co.,* 254 Iowa 895, 897, 119 N.W.2d 865, 866 (1963); *see* § 613.15, The Code. Relevant on this issue is evidence disclosing decedent's age and life expectancy, characteristics and habits, health, education or opportunity for education, general ability, other occupational qualifications, industriousness, intelligence, manner of living, sobriety or intemperance, frugality or lavishness, and other personal characteristics that are of assistance in securing business or earning money. *Ehlinger v. State,* 237 N.W.2d 784, 792 (Iowa 1976); *Schmitt,* 170 N.W.2d at 655.

In this case plaintiff introduced expert testimony which projected decedents' corporate salaries over anticipated working years, with appropriate adjustments for taxes and present value, to assist the jury in arriving at an anticipated accumulation had they lived out normal lives. But of course this was not a true reflection of earning power, especially for James, as earnings were left in the family corporation for its expansion and growth.

Plaintiff's expert economist attempted to meet this hiatus by projecting the net worth of ISC as "[t]he future value of the ownership position in the company, based on James and Ellen Hauser continuing to operate the company . . . in the manner in which they'd operated it in the previous 25 years." The projected values, assuming a continuation of the past 8.15 percent annual company growth rate, were calculated to decedents' assumed ages sixty-five and seventy. Reduced to present value, these computations resulted in value increases for the combined estates of $256,934 and $346,202 to ages sixty-five and seventy, respectively. Plaintiff-executor makes no assertion the alleged error in admission of this testimony was not preserved by defendants' limine motion to exclude it, which was overruled. *State v. O'Connell,* 275 N.W.2d 197, 202 (Iowa 1979); *see Nepple v. Weifenbach,* 274 N.W.2d 728, 732 (Iowa 1979).

These parties have found no authority for or against thus projecting growth of corporate net worth as bearing on the accumulation issue, nor has our research produced any. Both cite injury and death cases involving issues of profits as reflecting diminution or extinction of earning capacity. We agree the injury decisions are apposite here.

The general rule as to profits, stated in an Annotation found at 45 A.L.R.3d 345, 353 (1972), is:

> [W]here the profits from a business enterprise result primarily from the personal endeavors, skill, and attention of the owner, rather than from his investment of capital or from the labor of other persons, such business profits are a proper factor to consider in the determination of the business owner's lost earnings or earning capacity in personal injury and wrongful death actions.

The polestar injury case in Iowa is *Mitchell v. Chicago, Rock Island & Pacific Railway,* 138 Iowa 283, 290–91, 114 N.W. 622, 625 (1908), where this court wrote:

> The loss of future profits in plaintiff's business could not be taken into account

in estimating the damages he had suffered. And evidence of past profits was not admissible as tending to show what his profits in the future would be likely to be, but for the injury. It does not follow, however, that proof of the character of business the person injured has been engaged in, and the amount of his yearly accumulations for a considerable period prior to the injury, when these mainly are due to his personal efforts, may not be shown for some other purpose. Often his earning capacity in the past can be proved in no other way. Where the party injured has worked for wages or on salary, evidence of the amount received is uniformly admitted. But plaintiff always had conducted a business of his own, attending to it personally and without any considerable assistance, and had never received wages. In such a case, how shall the financial loss due to the impairment of the earning capacity be shown? Quite naturally, as was done in the case at bar, by proving the character of t'.e business, the amount of time given to it, what the returns had been, and from these, in connection with the capital invested, a fair idea of the party's earning power at the time of the accident may be inferred. Such evidence indicates the character and value of the service the party was capable of rendering immediately before the injury, precisely as proof of employment at some occupation at wages or a salary would have done. Of course, the fact that some capital is made use of is an important consideration, and must be taken into account in determining the earning power; and, on the other hand, the recognized fact that the earning capacity of a man operating his own business ordinarily is greater than that of an employé in the same line of service should not be overlooked. The object of such evidence is to show the capacity to earn values, and for this purpose it is quite as pertinent to the issue, even though not as definite as proof of wages or salary. The word "earnings" means the fruit or reward of labor—the price of services performed. "Profits" represent the net gain made from an investment, or from the prosecution of some business. (Citations omitted.)

Our subsequent decisions have not departed materially from *Mitchell*. The distinction has been maintained between loss of earnings, upon which evidence is admissible, and loss of profits, which ordinarily is so speculative as to be inadmissible as a direct measure of damages in a tort action for injury or death. *Shewry v. Heuer*, 255 Iowa 147, 157, 121 N.W.2d 529, 535 (1963). On the other hand, we have allowed proof of past profits in a business mainly dependent on the injured person's efforts as bearing on his or her earning power prior to the injury. *Amelsburg v. Lunning*, 234 Iowa 852, 855, 14 N.W.2d 680, 681–82 (1944); *Alitz v. Minneapolis & St. Louis Railroad*, 196 Iowa 437, 443, 193 N.W. 423, 425–26 (1923); see *Trushcheff v. Abell-Howe Co.*, 239 N.W.2d 116, 123 (Iowa 1976); *Shewry v. Heuer*, 255 Iowa at 157, 121 N.W.2d at 535; *Nicholson v. City of Des Moines*, 246 Iowa 318, 327–28, 67 N.W.2d 533, 538–39 (1954); Annot., 45 A.L.R.3d 345 (1972); 22 Am. Jur.2d *Damages* § 175 (1965); 22 Am.Jur.2d *Death* § 155 (1965).

The evidence in this case dramatically details James' full-time efforts and success in making a volatile business prosper and grow over a twenty-four year period. We think it was within trial court's discretion to permit lay and expert testimony relating to that growth, and the past profits of the operation, as bearing upon his earning ability. See *Schmitt*, 170 N.W.2d at 656; *Klingbeil v. Truesdell*, 256 Minn. 360, 369, 98 N.W.2d 134, 141 (1959). We hold the unusual circumstances here remove this case from the general rule even though earnings left in the business may have paid employees and generated capital which enhanced those profits. After all, decedents were supervising daily the capital and employees used in ISC operations.

Overall, this evidence tended to prove frugality and tendency to save money, drive, business acumen, managerial ability, and the size and contours of the enterprise

decedents were capable of operating. *See Nicholson v. City of Des Moines*, 246 Iowa 318, 325–26, 67 N.W.2d 533, 537–38 (1954) (admission of evidence decedent had conveyed residential property to daughter two years prior to death upheld "as evidence of accumulations of property made by the deceased during his lifetime"); *Spaulding v. Chicago, St. Paul & Kansas City Railway*, 98 Iowa 205, 213, 219, 67 N.W. 227, 230, 232 (1896) (prior gifts and investment in life insurance competent "as tending to show [decedent's] ability to earn money, and his habits with respect to saving it"; instruction permitting jury to consider "the amount of property which [decedent] had accumulated at the time of his death" in measurement of damages in death case upheld). *See also Kelly v. Chicago, Rock Island & Pacific Railway*, 138 Iowa 273, 277, 114 N.W. 536, 538 (1908) (*Spaulding* instruction stated to have been proper).

■ But this does not mean that evidence should have been admitted to show projected corporate growth under James and Ellen's management for years into the future. Such expert projections, reduced to present value, may have influenced the jury to make dollar awards which not only reflected the earning ability of these decedents, but income resulting from invested capital and the markup on hired labor. No attempt was made by plaintiff's expert to factor out these elements. Aside from the *Mitchell* definition of *earning capacity* vis-a-vis *profits*, trial court's instructions did not inform the jury how the specific sums computed by the expert, reflecting present value of projected corporate *net worth*, were to be treated. We hold projected net worth of the corporation was inadmissible for the same reasons that projected profits ordinarily are inadmissible: It is too speculative and based on too many variables. *See Trushcheff v. Abell-Howe Co.*, 239 N.W.2d at 122–23 (defendant not permitted to show post-accident profits from plaintiff's business which exceeded his pre-accident wages); Annot., 45 A.L.R.3d 345 (1972); 22 Am.Jur.2d *Damages* § 175 (1965).

■ Our above holding does not mean that plaintiff may not introduce expert testimony on the reasonable value of decedents' services to their corporation as bearing on their earning capacity. *See Trushcheff v. Abell-Howe Co.*, 239 N.W.2d at 123 ("Moreover, Abell-Howe was not precluded from offering evidence as to the *value* of Trushcheff's services to the business, as opposed to related *profits* or *income*.") (emphasis in original); *Escher v. Carroll County*, 146 Iowa 738, 739, 125 N.W. 810, 811 (1910); *Klingbeil v. Truesdell*, 256 Minn. at 369–70, 98 N.W.2d at 141–42. It is plain that plaintiff's evidence should not be limited to the salaries they took out of the corporation they controlled if those salaries were not a fair reflection of the amounts they earned by their own efforts.

We hold trial court erred in admitting the evidence relating to the present value of the projected net worth of ISC. Because the case must be remanded for new trial, we treat the remaining issues only to the extent they may arise again.

II. *Instruction referring to loss of profits.*

Trial court's instruction 7 was an adaptation of Iowa Uniform Jury Instructions No. 3.8 and 3.8A.

Defendants objected to this instruction as being patterned after instructions designed to be employed in injury, and not death, situations, and specifically objected to portions dealing with profits.

■ On appeal, defendants urge it was error for trial court to instruct that "there can be no recovery for profits, but such evidence may be considered in determining the fair and reasonable value of any loss of earning capacity." Without approving this sentence otherwise, it is sufficient here to refer to that portion of division I of this opinion in which we hold in this case past profits may be considered as bearing on earning capacity.

But the last paragraph of instruction 7 relates to "future loss of earning capacity" and concludes, "You will give no consideration to evidence of loss of profits, except to

the extent that such evidence shows the value of decedents' services to their business, as distinct from profits of the business." Defendants' brief vigorously attacks this quoted sentence. Of course, there was no evidence of *loss* of profits in this case, probably because defendants successfully eliminated such proof by a limine motion. But in any event, we hold this portion of the instruction would be inappropriate. Projections of future profit losses would be held inadmissible for the same reasons we hold projections of the net worth of the corporation under decedents' management would be inadmissible. Instruction 7 should be appropriately restructured on retrial.

III. *Damages for loss of services.*

Defendants contend trial court erred in permitting the jury to consider loss of services to the three adult children as elements of damages and erred in failing to give defendants' requested instruction that the jury should not award damages for sentiment, grief, or loss of companionship. They assert the amount awarded for loss of services and support was excessive and should have been set aside or modified by remittitur.

■ We summarily treat the last prong of defendants' complaint first. The verdicts were lump-sum amounts presumably incorporating the several damage elements. Defendants made no request for separate special verdicts under Iowa R.Civ.P. 205. See *Team Central, Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 925 (Iowa 1978). Defendants instead attempted to prove by the jury foreman's affidavit the separate sum the jury computed for loss of services and support and incorporated in the lump-sum verdict. We are not persuaded the verdict may be so explained. See *Cavanaugh v. Jepson*, 167 N.W.2d 616, 624–25 (Iowa 1969); *State v. Dudley*, 147 Iowa 645, 653, 126 N.W. 812, 815 (1910). In any event, this problem may not recur on retrial.

■ Adult children can recover the loss of services and support. *Schmitt*, 170 N.W.2d at 664–65; see *Robeson v. Dilts*, 170 N.W.2d 408, 416 (Iowa 1969). Loss of support and loss of services are separate and

distinct items. *Adams v. Deur*, 173 N.W.2d 100, 107 (Iowa 1969). Contrary to defendants' contention, we find there was sufficient evidence of loss of services to these children to permit the issue to go to the jury.

■ There remains the question whether trial court should have given defendants' requested instruction directing the jury to make no award for sentiment, grief, or loss of companionship. In the context of parent-child relationships, we find no reason to assume the legislature intended loss of "services" as used in section 613.15, The Code, to have a different meaning from loss of "services" in former Iowa R.Civ.P. 8. We construed the latter provision to include loss of companionship and society. *Wardlow v. City of Keokuk*, 190 N.W.2d 439, 448 (Iowa 1971); see *Pagitt v. City of Keokuk*, 206 N.W.2d 700, 703 (Iowa 1973); W. Prosser, Handbook of the Law of Torts § 127, at 908 (4th ed. 1971) ("[T]here is now a decided tendency to find that the society, care and attention of the deceased are 'services' to the survivor with a financial value, which may be compensated."). At the same time, the term does not include "grief, mental anguish or suffering," *id.*, and upon retrial the jury should be so instructed.

IV. *Personal consumption expenditures.*

■ Deductions for personal consumption are of course important calculations in determining the extent of lost accumulations. See Iowa Uniform Jury Instruction No. 3.10. Defendants assert trial court erred in failing to grant their motion for directed verdict because there was inadequate evidence of decedents' level of personal consumption expenditures. While plaintiff's economist attempted no projected calculations of this factor, there was considerable evidence adduced as to decedents' life-styles and frugality. We think the rationale of *Haumersen v. Ford Motor Co.*, 257 N.W.2d at 17–18, applies. In discussing the lack of evidence as to maintenance of a minor male child we there stated:

Plaintiffs might indeed have attempted to estimate such cost, but for that matter, so could the jurors themselves, who are presumed to have been reasonable men, acquainted with the ordinary affairs of life, and doubtless as well informed as plaintiffs themselves regarding the expenses reasonably incident to the support of a boy of the age of the deceased. *Id.* at 18.

The same commonsense ability to estimate personal consumption deductions should be accorded a jury under the record before us. *See also Baker v. Beal*, 225 N.W.2d 106, 111–12 (Iowa 1975).

V. *Tax treatment of wrongful death damages.*

■ Under the Iowa statute, awards for wrongful death are not subject to federal estate taxes, *Lang v. United States*, 356 F.Supp. 546, 548–49 (S.D.Iowa 1973); *In re Estate of Johnson*, 213 N.W.2d 536, 538 (Iowa 1973). Nor are such awards subjected to state inheritance taxes. *Estate of Dieleman v. Department of Revenue*, 222 N.W.2d 459, 462 (Iowa 1974).

■ Defendants contend trial court erred in failing to permit their expert witness to testify concerning the additional estate taxes these decedents' estates would have been subjected to had they lived to age sixty-five and died a natural death. Defendants rely on *Adams v. Deur*, 173 N.W.2d at 105, where we held defendant in a wrongful death action should be permitted to develop the effect of income taxes as they relate to the present value of a decedent's projected estate.

But the accumulation measurement period only runs to time of death. *Schmitt*, 170 N.W.2d at 661. Taxes assessed after death should not be relevant to the crucial period.

To accept defendants' argument would circumvent the collateral source rule in Iowa. We recently have reaffirmed this rule in *Stewart v. Madison*, 278 N.W.2d 284, 293–94 (Iowa 1979), and *Conley v. Warne*, 236 N.W.2d 682, 688 (Iowa 1975). *See also Groesbeck v. Napier*, 275 N.W.2d 388, 392–93 (Iowa 1979) (rationale behind "collateral source" rule applied to exclude evidence of remarriage of surviving spouse on issue of damages in wrongful death action). A tax saving was treated as a collateral source, thus precluding a damage award reduction, in *Wiesenberger v. W. E. Hutton & Co.*, 35 F.R.D. 556, 558 (S.D.N.Y.1964). So viewed, the following language from *Rigby v. Eastman*, 217 N.W.2d 604, 609 (Iowa 1974), is pertinent:

> The weight of authority is conclusive to the effect that a defendant owes to the injured compensation for injuries, the proximate cause of which was his own negligence, and that the payment by a third party cannot relieve him of this obligation; that regardless of the motive impelling their payment, whether from affection, philanthropy, or contract, that the injured is the beneficiary of the bounty, and not the defendant who caused the injury.

(Quoting *Clark v. Berry Seed Co.*, 225 Iowa 262, 271, 280 N.W. 505, 510 (1938).) The same policy reasons support our holding that the injured party and his estate, rather than the admittedly negligent defendant, should benefit from the federal estate and state inheritance tax savings accorded the estate.

Trial court properly sustained objections to the proffered testimony.

VI. *Other issues.*

Other issues raised by defendants likely will not recur on retrial, or are mooted by our disposition of this appeal.

For the reasons stated in division I, the judgment entered below must be reversed and this case remanded for new trial.

REVERSED AND REMANDED.

All Justices concur except UHLEN-HOPP, J., who concurs specially.

UHLENHOPP, Justice (concurring specially).

I concur in the result and in all of the court's opinion except the part relating to growth in past net worth of ISC. The court holds that evidence as to *future* net worth of ISC was inadmissible. In my view evi-

dence as to *past* net worth was also inadmissible, for want of foundation evidence at the trial.

The measure of damages is the present value of the estate the decedent would reasonably be expected to have accumulated *as a result of his own efforts.* *Haumersen v. Ford Motor Co.,* 257 N.W.2d 7, 16 (Iowa 1977). As bearing on what Hauser would probably have accumulated as a result of his own efforts, plaintiff showed *inter alia* the salary Hauser received. But Hauser's own efforts also contributed to the growth of ISC, a closely-held business in which he was a major stockholder. Plaintiff therefore also took ISC into account; it applied the net worth method to ISC to show additional amounts Hauser would probably have accumulated as a result of ISC growth. As to past growth, plaintiff showed that ISC originally was worth $36,000 and that twenty-four years later, at Hauser's death, it was worth $255,000.

I think a plaintiff can show past growth in the net worth of a business such as ISC, *provided the plaintiff introduces foundation evidence which factors out growth resulting from forces other than the decedent's own efforts.* The foundation evidence would not be necessary where the closely-held business had little capital and employed only the individual who is killed. But the necessity for the foundation evidence is more evident where the closely-held business has large capitalization and numerous employees. There the net-worth growth of the business may have been attributable in substantial part to factors other than the decedent's own efforts.

ISC employed substantial capital, which probably contributed to earnings and therefore to growth. Part of the capital was in physical assets, and ISC probably also enjoyed unearned increment in those assets as a result of rising property prices over the twenty-four year period. ISC also had several employees beside Hauser and probably generated income from an override on charges for their services. Undoubtedly Hauser's own efforts contributed to the growth of ISC, but undoubtedly also other factors played a part. In addition, the growth in ISC from Hauser's efforts would only be relevant on the economic value of his life to the extent of his percentage of ownership; the jury's ultimate concern was the value of *Hauser's* life, not the value of ISC per se.

A plaintiff in a death case who desires to show the past net-worth growth of a business such as ISC should be required to show also the portion of the growth which was attributable to the decedent's own efforts by introducing evidence which factors out other causes or enables the jury to factor them out. Plaintiff did not introduce such evidence here; the jury was left at sea. I disagree, therefore, with the court's holding that past growth of ISC was admissible on this record. See generally, on this subject, *Featherly v. Continental Insurance Co.,* 73 Wis.2d 273, 281, 243 N.W.2d 806, 812 (1976) (foundation must be "sufficient to make it possible for the jury to distinguish the portion of the business income attributable to the plaintiff's personal capacity from that portion of the income attributable to capital investment and the labor of others"); *Pumpelly v. Reeves,* 273 Or. 808, 813, 543 P.2d 682, 685 (1975); 16 Am.Jur. *Proof of Facts* § 29, at 794, 808 (1965); 45 A.L.R.3d 345, 357–58 (1972).

I would hold the evidence of past net-worth growth of ISC was inadmissible on this record.