CHARLES SHEWRY, appellant, v. C. E. HEUER, appellee.

No. 50971.

(Reported in 121 N.W.2d 529)

May 7, 1963.

Eckerman, McFerren & Fair, of Davenport, for appellant.

Carl W. Schultz, of Davenport, for appellee.

GARFIELD, C. J.—This is a law action to recover for personal injuries and damage to his truck sustained when plaintiff's pickup truck, stopped for a traffic light at a street intersection in Davenport, was struck from the rear by defendant's pickup

truck. Jury trial resulted in verdict and judgment for plaintiff for $109.71. The jury apparently arrived at this amount by adding the agreed damage to plaintiff's truck, $84.71, to his doctor bill of $25. The trial court overruled plaintiff's motion for new trial based on inadequacy of the verdict and other grounds. Plaintiff has appealed.

Plaintiff's main contention is that damages for pain and suffering were properly claimed and proven and the jury was bound to make some reasonable allowance therefor. The trial court was of the opinion the jury might have found plaintiff suffered no personal injuries or, because his petition prayed for judgment of $25,000, that he was exaggerating his troubles in all respects. In view of the verdict returned, we think the denial of a new trial cannot fairly and logically be accounted for on such ground and the ruling was an abuse of discretion.

It seems best to refer to the evidence bearing on plaintiff's injuries. He was 59 at the time of the accident November 30, 1959. In partnership with his son he was engaged in fabricating and welding metals. He testifies his truck went "quite a ways" down the street when it was hit from the rear by defendant's truck. Defendant says plaintiff's truck moved 50 to 60 feet. Plaintiff testifies he was "banged up pretty good" and his condition got worse afterward, he sat around the rest of the day because he was pretty sore, was pretty sore the next few days, could hardly move around, tried to work and could not do anything, could not work this off as he thought he could, seldom sleeps two hours without waking, sometimes he wakes up yelling, had a lot of pain, had headaches which he still has in his neck and back (trial was 23 months after the accident), eats a lot of bufferin when the pain is too bad, cannot drive much since the accident, cannot bend over a drawing board to draw plans for customers, cannot do most of the work he did before the accident, is at his place of business only 30 hours a week just walking or sitting around, cannot do much manual labor now, cannot do much around home, could not shovel snow, his neck is not as sore as it originally was but his headaches get so bad he sometimes has to vomit. Plaintiff says he enjoyed good health and was not troubled in these respects before the accident.

Plaintiff is corroborated in many matters by his wife and to some extent by his partner-son and an employee of theirs in the welding business. There is no evidence to the contrary. Nearest approach to it is that defendant says plaintiff talked to him twice over the telephone during the week following the accident and did not mention being injured. Plaintiff testifies, however, he told defendant in both these phone conversations he was "banged up", his back and neck were hurt and were still bothering him a lot.

Plaintiff first consulted a doctor eight days after the accident—a Doctor Bessmer who has long specialized in traumatic medicine and surgery. The doctor testifies concerning this and two other visits of plaintiff to his office. Plaintiff complained of pain in his neck and back and inability to work and sleep, X rays showed no broken bones, the doctor discovered evidence plaintiff had painful muscles in his neck and back and headaches from his neck, the neck could hardly be moved and plaintiff could not bend, he had muscle strains of his back and neck which also involved the ligaments. "I think he was jerked and these structures were overstrained and became painful." There is other similar testimony. The doctor says he has known plaintiff a number of years, he is not emotionally disturbed, is very stable, he can stand and work with more pain than the average patient.

Plaintiff saw Doctor Bessmer again December 8, 1960, and again about three weeks before the trial in October 1961. The doctor testifies that in December 1960 plaintiff had not recovered and still had pain in his neck and back. Three weeks before the trial he still had some pain, particularly in his lower back. The doctor says he cannot tell definitely how long plaintiff will be bothered with this, "he is going to have some trouble for a while yet. That is sure."

On cross-examination of the doctor defendant sought to show plaintiff's symptoms were based on his own statements. To this the doctor answered, "Oh, no. He is stiff. He can't move his muscles. He is spastic. His muscles are hard. You can verify the statement he is having the trouble. That is easily detected."

There is no testimony contrary to Doctor Bessmer's. The only testimony defendant offered was his own, mostly as to happening of the accident.

Doctor Bessmer's bill was $25 and plaintiff paid it.

The jury was instructed that in order for plaintiff to recover he must establish defendant was negligent, such negligence was the proximate cause of the collision and plaintiff's resultant damage, plaintiff was free from contributory negligence, and suffered damages to some extent as alleged. Obviously, the verdict for plaintiff could not have been reached without an affirmative finding on all four propositions.

The jury was also instructed to determine whether plaintiff had established that he has endured, or will endure in the future, pain and suffering on account of his injuries. With reference to the doctor bill the jury was told it could be allowed only if the jury found the services for which the bill was rendered were necessary. The jury thus apparently made an affirmative finding as to the necessity for the doctor's services.

I. We can find no logical ground on which the jury could award plaintiff the cost of medical services made necessary by his pain and suffering and yet allow him nothing for the pain and suffering. There is no basis for finding that anything other than the pain and suffering resulting from the accident necessitated the medical services for which allowance was made. Of a similar situation Wall v. Van Meter, 311 Ky. 198, 201, 223 S.W. 2d 734, 736, 20 A. L. R.2d 272, 274, 275, says: "It is evident from the verdict that the jury found appellee was negligent and that appellant was not guilty of contributory negligence, and was entitled to recover the damages he sustained in the accident. Such being the case, it was incumbent upon the jury to compensate him for all damages he suffered, that is, for pain and suffering as well as for his medical expenses. *With reason the jury could not have awarded him a recovery for his medical expenses and then denied him recovery for the very injuries which necessitated such medical expenses* [emphasis added]."

An annotation in 20 A. L. R.2d 276, following Wall v. Van Meter, states:

"The question discussed * * * is whether a verdict may validly award plaintiff, in a personal injury action, the exact amount of his medical expenses without simultaneously awarding

him damages for pain and suffering where claim therefor was properly made and proven.

"The number of cases in which this question has been specifically answered is relatively small. But despite the dearth of authority, it seems permissible to state, on general principles, that such a verdict is invalid, and all the cases in which this particular point was involved are in accord with this rule."

Decisions other than Wall v. Van Meter, supra, which support the above statement and our holding here include: Johnson v. Franklin, 112 Conn. 228, 152 A. 64; Browder v. Beckman, 275 Ill. App. 193, 198, 199; Fordon v. Bender, 363 Mich. 124, 108 N.W.2d 896; Mosley v. Dati, 363 Mich. 690, 110 N.W.2d 637.

We refer now to some of our own precedents we think support our conclusion here. Tathwell v. City of Cedar Rapids, 122 Iowa 50, 54, 97 N.W. 96, 97, says: "* * * the power to set aside the verdict, when manifestly inconsistent with the evidence, and the result of a misconception by the jury of their powers and duties, is as fully recognized where the verdict is inadequate as where it is excessive; * * *." This has recently been followed in Webster v. City of Colfax, 250 Iowa 181, 185, 93 N.W.2d 91, 93, Feldhahn v. Van DeVenter, 253 Iowa 1194, 1197, 115 N.W.2d 862, 864, and Allbee v. Berry, 254 Iowa 712, 716, 119 N.W.2d 230, 232.

Torrence v. Sharp, 246 Iowa 460, 464, 465, 68 N.W.2d 85, 88, states with reference to the grant of a new trial: "The general rule appears to be that a plaintiff who has been awarded inadequate damages is as well entitled to relief as a defendant who suffers from one which is excessive [citations]."

The trial court granted Tathwell in his case, supra, a new trial for inadequacy of the verdict for $100 and we affirmed. This is also true of Torrence v. Sharp. In Webster v. City of Colfax, supra, the trial court granted a new trial where the verdict was for past medical and hospital expenses only and we also affirmed. The Feldhahn and Allbee decisions reversed the trial court's failure to grant a new trial because of grossly inadequate damages. The Allbee award equalled the exact amount of medical and hospital services. It is true in the three most recent

cases just cited the injuries appear to have been more serious than plaintiff's were here. But this is hardly adequate basis for distinguishing the decisions. See also DeMoss v. Brown Cab Co., 218 Iowa 77, 78, 254 N.W. 17, and citations.

II. Defendant makes some attempt to justify the verdict on the ground pleaded in his answer that plaintiff failed to follow the advice of his physician as to the care and treatment of any alleged injury and any alleged effects on plaintiff's health result from such failure. Denial of *any* recovery for pain and suffering cannot be justified on this ground.

Defendant's pleading was an apparent attempt to comply with the provision of section 619.7, Code, 1962, that in an action such as this defendant may set forth in his answer any facts of which evidence is admissible to mitigate or otherwise reduce the damages and he may give in evidence the mitigating circumstances. Section 619.8 states: "No mitigating circumstances shall be proved unless pleaded, except such as are shown by or grow out of the testimony introduced by the adverse party."

These statutes treat the matter of minimizing damages as a special defense which defendant must plead and prove or he is limited to circumstances growing out of plaintiff's testimony. Lannom Mfg. Co. v. Strauss Co., 235 Iowa 97, 106, 15 N.W.2d 899, 903.

The trial court instructed the jury it was plaintiff's duty to use reasonable and ordinary care and diligence in effecting a cure or treatment for injuries, if any, and he cannot recover for consequences which might thus have been avoided. Also that it has been shown certain treatment which was recommended might be helpful in reducing the consequences of an injury and the jury should determine whether plaintiff followed such recommendations, and the effect, if not followed, on the extent of the injury.

The jury should have been told the burden to prove plaintiff failed to minimize his damages rested on defendant. Lannom Mfg. Co. v. Strauss Co., supra. We say this in view of the chance of another trial.

It is well settled the defense of failure to minimize or mitigate the damages does not entirely bar recovery but only

prevents an award of such damages as might have been avoided by reasonable efforts on plaintiff's part. Keyes v. City of Cedar Falls, 107 Iowa 509, 515, 78 N.W. 227; Annotation, 48 A. L. R.2d 346, 356; 25 C. J. S., Damages, section 33, page 502, section 36b, pages 508, 509; 15 Am. Jur., Damages, section 27, page 423 ("* * * a failure to exercise reasonable care to minimize the damages is not a complete bar, but merely goes to the amount of the damages recoverable.").

Further, an injured person is under no absolute obligation to follow the advice of his physician in order to minimize his damages. His duty in this respect is to use ordinary care in the matter of following such advice. Annotation, 48 A. L. R.2d 346, 365; 15 Am. Jur., Damages, section 38, page 437.

As previously stated, we conclude that in view of the verdict returned it was an abuse of discretion not to grant a new trial. We may add only the familiar observation that we are less reluctant to interfere where a new trial is denied than where it is granted. See rule 344(f)4, Rules of Civil Procedure.

III. Plaintiff's remaining assigned errors relate to the exclusion of evidence offered by him which he says bore on his loss of time from his business as a result of his injuries, the giving of jury instruction 8 and refusal of plaintiff's first requested instruction.

Plaintiff's petition alleged that as a result of his injuries he was delayed and hindered in his business and occupation, lost a great deal of time therefrom and was deprived of gains and profits he would have otherwise acquired.

Plaintiff offered to show in evidence what the gross profits were from his business in 1951 as disclosed by his income tax return for that year. The court excluded the offer as too remote. We approve the ruling.

Plaintiff offered the income tax returns for 1959 and 1960 of the partnership consisting of him and his son. The court excluded them as too remote and speculative. We are not persuaded this was error. These exhibits are not before us and we do not know what if any light they throw upon plaintiff's claim for loss of time from his business. Doubtless any reduction in gross or net profits shown by these tax returns depends to some

extent upon a number of factors other than plaintiff's alleged loss of time from the business as a result of his injuries—such factors as amount of capital invested, general business conditions, cost of materials and labor, and depreciation and repair of buildings and machinery. According to the ruling on the motion for new trial the net income for the partnership for 1959 and 1960, as shown by these exhibits, varied only some $1000 or $1500 and part of this difference was accounted for by depreciation. Plaintiff does not dispute this.

Instruction 8 withdrew from jury consideration plaintiff's claim that due to his injuries he was deprived of gains and profits from his business and any evidence relating thereto except insofar as the jury might find such evidence to bear upon the extent of plaintiff's injuries, if any, and pain and suffering experienced. We approve this instruction. Insofar as it withdrew plaintiff's claim for loss of gains and profits from his business, as a separate element of recovery there can be little doubt of its correctness. Such gains and profits, as we have indicated, doubtless depended in part upon several factors other than the time plaintiff was able to devote to the business.

Plaintiff's principal complaint against instruction 8 seems to be that evidence bearing on gains and profits from the business was relevant to his claim for loss of time therefrom due to his injuries, shed some light thereon, and should not have been withdrawn. While the question may not be free from doubt we are not persuaded the withdrawal of the small amount of evidence of gains and profits from plaintiff's business was error. It had little relevancy to plaintiff's claim for loss of time from the business by reason of his injuries.

A more serious complaint against the instructions is the court's refusal to submit plaintiff's claim for loss of time from his business due to his injuries. The claim was sufficiently pleaded in his petition. The court thought that because plaintiff continued to receive fifty percent of the net profits from the business and they depended on so many complicated factors the jury could not successfully cope with such a claim as that for loss of time. Plaintiff's first requested instruction bore on this claim, plaintiff fully explained to the court why the claim should be

submitted, duly objected to the refusal of his request for the reasons so explained and renewed his complaint in his motion for new trial. The only elements of damage submitted were for past and future pain and suffering, the doctor bill and expenses for repair to plaintiff's truck.

We think it was error not to submit plaintiff's claim for loss of time from his business and occupation as a result of his injuries. It is obvious and the authorities agree there is a difference between loss of time or earnings and loss of profits. Earnings are the fruit or award for labor, while profits are the gain from an investment or business after payment of all expenses. Mitchell v. Chicago, R. I. & P. Ry. Co., 138 Iowa 283, 291, 114 N.W. 622; Baxter v. Philadelphia & Reading Ry. Co., 264 Pa. 467, 107 A. 881, 9 A. L. R. 504, 506, and annotation, 510; LoSchiavo v. Northern Ohio Traction & Light Co., 106 Ohio St. 61, 138 N.E. 372, 373, 27 A. L. R. 424, 427, and annotation, 430, 431; 15 Am. Jur., Damages, section 88; 25 C. J. S., Damages, section 86, page 618. See also Ball v. T. J. Pardy Constr. Co., 108 Conn. 549, 143 A. 855, 63 A. L. R. 139, 141, and annotation, 142, 143; Steitz v. Gifford, 280 N. Y. 15, 19 N.E.2d 661, 122 A. L. R. 292, and annotation, 297, 299.

In general a plaintiff is entitled to recover for loss of time or earnings as a result of his injuries but not for loss of profits as such since they are too speculative. Authorities last above. This is not to say evidence of loss of profits, especially net profits, is not admissible in many cases on the issue of loss of time, earnings or earning capacity of the person engaged in the business. Mitchell v. Chicago, R. I. & P. Ry. Co., supra, at pages 291–294 of 138 Iowa; Amelsburg v. Lunning, 234 Iowa 852, 855, 14 N.W.2d 680, 681, 682. See also Instruction 3.8, Uniform Jury Instructions, published by Iowa State Bar Association.

We have held at least three times that impairment of physical capacity in itself may be presumed to impair the general earning capacity of the person injured. Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 722, 723, 107 N.W.2d 85, 94, and citations.

There is much evidence plaintiff lost time from his business as a result of his injuries. He was required to offer

proof from which the jury might make some reasonable estimate of the fair value of such time. It was incapable of proof with mathematical certainty nor was this required. If plaintiff were a hired hand the loss of his wages could probably be definitely shown. Certainly he should not be denied any recovery for this element merely because he did not work for wages and proof thereof may be more difficult. Mitchell v. Chicago, R. I. & P. Ry. Co., supra, 138 Iowa 283, 292, 293, 114 N.W. 622..

The jury could estimate from the evidence with reasonable accuracy the amount of time plaintiff lost from his business because of his injuries. There is undisputed testimony received without objection that the hourly wage at the time of trial of a welder employed by the partnership throughout the period subsequent to the accident was $2.40. It would seem a finding would be justified that the value of plaintiff's time to his business was at least as much as that of an employee who was able to do only part of the work plaintiff was able to do before the accident. We have said "the recognized fact that the earning capacity of a man operating his own business ordinarily is greater than that of an employé in the same line of service should not be overlooked." Mitchell v. Chicago, R. I. & P. Ry. Co., supra, at page 291 of 138 Iowa. There is much evidence of plaintiff's age, skill, training, experience and industry in the welding business.

On this question the case is much like Amelsburg v. Lunning, supra, 234 Iowa 852, 854–856, 14 N.W.2d 680, 681, 682, where plaintiff was a farmer. It was contended because he raised about the same number of hogs, milked the same number of cows and raised about the same crops in the year following his injury as in the year preceding it there was no basis for recovery for loss of earnings. There was testimony plaintiff's injuries prevented him from carrying on his usual farming activities. We held an allowance for loss of earnings was proper. See also Miller v. McCoy Truck Lines, 243 Iowa 483, 489–491, 52 N.W.2d 62, 66, 67; Buffalo v. City of Des Moines, 193 Iowa 194, 200, 201, 186 N.W. 844. The conclusion reached in this division furnishes an added ground for the grant of a new trial.

IV. Appellant's brief and argument sets out in full

his motion for new trial and sets out twice the trial court's eight-page ruling thereon. The motion and ruling appear in the printed record and it was unnecessary to copy them in full in the brief. References to where they could be found in the record would have been sufficient. We therefore deem it proper to direct that $18 of the cost of printing be taxed to appellant.

We have been trying, apparently without complete success, to minimize printing costs. That was an important considera-tion, along with a desire to save the time of attorneys, in the adoption of rule 344(f) on September 17, 1962, providing that authorities need not be cited for several well established proposi-tions.—Reversed and remanded.

All JUSTICES concur.