Darcy FISHER, Appellee,

v.

Lisa DAVIS, Appellant.

No. 98–119.

Supreme Court of Iowa.

Oct. 13, 1999.

Donald L. Carr II and Jill Mataya Corry of Sullivan & Ward, P.C., Des Moines, for appellant.

Paul W. Demro of Correll, Sheerer, Benson, Engels, Galles & Demro, P.L.C., Cedar Falls, for appellee.

Considered by CARTER, P.J., and LAVORATO, SNELL, CADY, and SCHULTZ,* JJ.

LAVORATO, Justice.

In this personal injury case, the district court found the jury verdict was inadequate and granted the plaintiff a new trial unless both the plaintiff and the defendant consented to an additur. The defendant appealed, contending that the district court abused its discretion in ruling that the plaintiff was entitled to a new trial. In the alternative, the defendant contends the district court erred in requiring the consent of the plaintiff to the additur. The defendant also contends that any retrial should be limited to damages relating to the injury for which the jury awarded medical expenses and should exclude other injuries the plaintiff claims she sustained.

We conclude the district court was correct in finding that the damage award was inadequate. Because the appeal reinstated the judgment, we reverse the judgment. We also conclude the district court erred in requiring the plaintiff's consent to the additur. We remand to allow the district court to decide whether to simply grant a new trial or grant a new trial on condition of an additur. If either party is dissatisfied with the additur, that party may appeal. Any retrial should be limited to damages relating to the injury for which the jury awarded medical expenses.

## I. Background Facts and Proceedings.

On the afternoon of February 22, 1993, Lisa Davis was driving toward the intersection of Wagner Road and old Highway 20. The day was clear, but snow and ice had accumulated on the roads because of a snowstorm the previous night. As Davis approached the intersection, she slowed her truck in preparation for a set of bumpy railroad tracks. As she crossed the tracks, Davis began pumping her brakes to slow down but the brakes locked, causing her truck to slide down a slight hill and into the back end of a car that was stopped at the intersection. Darcy Fisher was behind the wheel of the car that Davis' truck had rear-ended.

At the time of the collision, Fisher was turned and looking at the child in the backseat because she was anticipating the collision. (Fisher was baby-sitting the child at the time.) On impact, Fisher felt pain. Although Fisher did not think she was seriously hurt, she had pain several hours later. She saw Dr. Thomas Pattee the next day because the left side of her neck and the left temple of her skull were sore. Pattee diagnosed Fisher's condition as "an injury to the cervical and thoracic area of the spine," commonly referred to as a whiplash injury. He prescribed anti-inflammatory medication, pain pills, and muscle relaxers. He also recommended a follow-up visit.

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

Pattee saw Fisher three days later and administered osteopathic manipulative therapy. At that time Fisher was complaining of pain in her neck and had a limited range of motion in that area. On March 2, which was her third visit, Pattee noted Fisher's condition "markedly improved." Pattee treated Fisher's neck condition sporadically until July 1994.

On March 16, 1993, Fisher complained to Pattee that she was having pain in her right arm and elbow. Pattee diagnosed her condition as epicondylitis, commonly referred to as "tennis elbow." Because the condition did not respond to treatment, Pattee referred Fisher to a physical therapist for treatment. When that treatment proved unsuccessful, Pattee referred Fisher to Dr. Johnson, an orthopedic doctor. Johnson treated her with cortisone shots in the arm and pain pills. Because this treatment gave only temporary relief from her pain, Fisher saw Dr. Arnold Delbridge, another orthopedic doctor. Delbridge recommended surgery on the elbow, which he performed in February 1994. After surgery, Fisher had physical therapy on the elbow.

On March 18, 1994, Fisher for the first time complained of pain in her right shoulder. She made that complaint to the therapist who had been treating her elbow condition. On April 7 the therapist noted that Fisher's right shoulder was "clicking." After various treatments to the shoulder failed, Delbridge performed orthoscopic surgery on Fisher's shoulder in December 1995. Because the pain in Fisher's shoulder did not subside, Delbridge performed open shoulder surgery on Fisher in October 1996. Fisher had physical therapy on the shoulder after the surgery.

Fisher sued Davis in December 1994, contending the neck, elbow, and shoulder injuries resulted from the February 22, 1993 collision. The case was tried to the jury in June 1997. Fisher testified to the pain she suffered from her neck, elbow, and shoulder injuries. Pattee testified that Fisher's neck injury resulted from the collision. Delbridge likewise testified that Fisher's elbow and shoulder injuries resulted from the collision.

Several months before trial, Dr. Peter Wirtz examined Fisher at the defense's request. At the trial, the defense counsel asked Wirtz several hypothetical questions. The questions and answers follow:

Q. Doctor, I'd like for you to assume that Mrs. Fisher on or about February 22, 1993, was involved in a rear-end collision wherein her vehicle was struck going two to five miles per hour, and she was in the driver's seat of the motor vehicle. Would the soft tissue injury to her neck be consistent with that type of a collision? A. To my experience and education, an injury of that magnitude would result in a soft tissue Grade I strain.

Q. As a result of that what would you expect the course of treatment and recovery to be? A. I would expect there to be some symptoms of pain in that area for a period of time. The management would include restricted activities and medications, and over a short period of time, two to four, six weeks, it would respond.

Q. You observed neck muscular symptoms approximately four years after this collision. Would you attribute those particular symptoms to the automobile collision of February 22, 1993? A. No.

In response to several other similar hypothetical questions, Wirtz ruled out any connection between the collision and Fisher's elbow and shoulder conditions.

The defense also presented four witnesses who testified that they saw Fisher out dancing in a bar in September 1995. Each testified that they watched Fisher moving and waving her arms above her head as she danced with no apparent pain or limitations.

The district court submitted all three injuries to the jury. The jury instructions permitted the jury to allow damages for

(1) past medical expenses, (2) past lost wages, (3) past pain and suffering, (4) future pain and suffering, (5) loss of future earning capacity, (6) past loss of full mind and body, and (7) future loss of full mind and body. The court submitted a special verdict form as to each of these elements of damages. The jury, however, allowed only $534.14 for past medical expenses, all of which was attributable to the neck injury.

Fisher filed a motion for new trial, alleging that "the failure of the jury to award damages for past pain and suffering and other damages consistent therewith is an impermissible inconsistency under Iowa law." Fisher further alleged that based on that inconsistency she was entitled to a new trial on all the issues. Davis resisted the motion, contending the verdict was reasonable and consistent with the evidence.

The district court found that it was inherent in the verdict that the jury had found Fisher had sustained an injury to her neck that was caused by the collision and that necessitated medical care. From this finding, the court concluded that the failure to award some damages, even a relatively small amount, for her past pain and suffering attributable to that injury was unreasonable and internally inconsistent with the jury's finding that Fisher had sustained an injury.

The district court made the following further findings:

> However, because the verdict makes it clear that the jury found plaintiff was only entitled to recover the medical expenses for her neck injury, the only other damages plaintiff should have been awarded was for her pain and suffering during the three-week period following the accident. Under these circumstances, it is held that a $1000 additur would be appropriate to compensate plaintiff for her additional damages attributable to that injury alone.

The court then sustained Fisher's motion for new trial. The court ordered a new trial as to damages only unless *both* parties, within ten days of the ruling, accepted an additur of $1000 to the amount the jury had awarded. We find nothing in the record that either party accepted the additur. Davis appealed from the district court's ruling on Fisher's motion for new trial.

On appeal Davis contends the district court abused its discretion in granting a new trial because the verdict was supported by substantial evidence and was in accord with Iowa law. In the alternative, Davis contends that the district court erred in granting a new trial if Fisher alone refused to accept the additur. Finally, if we do affirm the grant of a new trial, Davis contends the issues should be limited to damages for Fisher's neck injuries.

## II. Whether the Verdict Was Supported by Substantial Evidence and Was in Accord with Iowa Law.

■ The district court may grant an aggrieved party a new trial when the jury awards excessive or inadequate damages, or when the verdict is not sustained by sufficient evidence, or is contrary to law. Iowa R. Civ. P. 244(d), (f). The district court has considerable discretion in ruling upon a motion for new trial based upon the ground that the verdict was inadequate. *Householder v. Town of Clayton,* 221 N.W.2d 488, 493 (Iowa 1974). Whether damages are so inadequate to warrant a new trial is for the district court to decide. *Id.* And we will not ordinarily disturb its discretion to grant or deny the motion unless an abuse of discretion is shown. *Id.* We are slower to interfere with the grant of a new trial than with its denial. Iowa R.App. P. 14(f)(4). Whether damages in a given case are adequate depends on the particular facts of the case. *Witte v. Vogt,* 443 N.W.2d 715, 716 (Iowa 1989). The test is whether the verdict fairly and reasonably compensates the party for the injury sustained. *Id.*

In *Cowan v. Flannery*, we observed that "[w]e have not adopted an inflexible rule that every verdict awarding only damages for medical expenses in a personal injury action is inadequate as a matter of law." 461 N.W.2d 155, 159 (Iowa 1990). Our survey of the cases showed that

> [w]e have affirmed the court's granting of a new trial where the evidence material to the damage award is undisputed and the damage award was approximately equal or less than the special damages.
>
> We have reversed the court's denial of a new trial where evidence material to the damage award is undisputed and the award was nearly equal or less than the special damages.
>
> We have affirmed the trial court's denial of a new trial where the evidence of the cause or extent of injury was disputed.
>
> We have also reversed the granting of a new trial based on inadequate damages where the evidence as to the nature, extent and severity of the injuries were disputed.

*Id.* (citations omitted).

■ We think the facts here fit the first scenario. As we shall discuss, there was undisputed evidence that Fisher sustained a neck injury in the collision, and she had pain and suffering as a result of that injury. In addition, the damage award was equal to the medical expenses for the neck injury with nothing for the pain and suffering. The district court was therefore well within its discretion to rule that Fisher was entitled to a new trial.

Fisher testified about the pain to her neck that she had shortly after the collision. Fisher saw Pattee the day following the collision. Pattee testified about her complaints of neck pain to him and that he treated her for those complaints with anti-inflammatory medication, muscle relaxers, pain medication, and osteopathic manipulation therapy. He also testified he treat-ed her sporadically for her neck injury until July 1994.

Although Wirtz minimized Fisher's neck injury, he did confirm that the rear-end type of collision Fisher experienced would result in a soft tissue injury to the neck of Grade I strain. He also confirmed that Fisher would be expected to (1) have some symptoms of pain from the neck injury for a period of time, (2) require medication for her neck injury, and (3) be restricted in her activities. He further testified that the injury should respond to treatment over a short period of time—two to four to six weeks.

In a similar type rear-end collision, this court reversed a district court ruling that denied the plaintiff's motion for new trial based on inadequacy of the verdict. The jury had only awarded the plaintiff his medical expenses of $25 and property damage to his vehicle in the amount of $84.71. *See Shewry v. Heuer,* 255 Iowa 147, 150, 121 N.W.2d 529, 531 (1963). In that case, as here, there was undisputed evidence that the plaintiff had suffered a neck injury and pain as a result of the injury.

In *Shewry,* the court noted that the district court had instructed the jury (1) to determine whether the plaintiff had established he endured past and future pain and suffering, and (2) that it could only allow the doctor bill if it found the services for which the bill was rendered were necessary. *Id.* at 152, 121 N.W.2d at 532. Given these instructions, the court reasoned that it could

> find no logical ground on which the jury could award plaintiff the cost of medical services made necessary by his pain and suffering and yet allow him nothing for the pain and suffering. There is no basis for finding that anything other than the pain and suffering resulting from the accident necessitated the medical services for which allowance was made.

*Id.*

Here, the district court had similarly instructed the jury. The jury allowed the

medical expenses made necessary by the neck injury and the resulting pain and suffering but nevertheless declined to award Fisher anything for her pain and suffering. We conclude it was illogical for the jury to award Fisher medical expenses to treat her neck injury and pain and then allow nothing for her pain and suffering.

As mentioned, the district court concluded that the jury's failure to award damages for pain and suffering was "unreasonable and internally inconsistent" with the jury's finding that Fisher had sustained a neck injury in the collision that necessitated medical treatment. Such a finding leads us to conclude that the district court did not abuse its discretion in granting a new trial on the following three stated grounds in rule 244: (1) inadequate damages, rule 244(d); (2) verdict is not sustained by sufficient evidence, rule 244(f); and (3) verdict is contrary to law, rule 244(g).

We observe that, in some of our cases on inadequate damages, this court, like the district court here, has used language that the verdict was "inconsistent with the evidence." *See, e.g., Shewry*, 255 Iowa at 153, 121 N.W.2d at 533. We have traced this language back to *Tathwell v. City of Cedar Rapids*, 122 Iowa 50, 54, 97 N.W. 96, 97 (1903). At the time this court decided *Tathwell*, there was no statute that expressly authorized trial courts in personal injury cases to grant a new trial on the grounds the verdict was inadequate. Common law, however, allowed trial courts to grant a new trial in case of an inadequate verdict on the ground that the verdict was inconsistent with the evidence. In addition, a statute allowed trial courts to grant a new trial when the evidence did not sustain the verdict. *See* Iowa Code § 3755(6) (1897). The court in *Tathwell* relied on the common law "inconsistency" rule and the statute regarding sufficiency of the evidence as authority for the trial courts to grant a new trial for inadequate verdicts in personal injury cases.

Now, we have a rule of civil procedure that expressly authorizes trial courts to grant a new trial on the ground that the verdict was inadequate. *See* Iowa R. Civ. P. 244(d). Additionally, our rule authorizes the trial courts to grant a new trial on the grounds the verdict was not supported by sufficient evidence and was contrary to law. *See* Iowa R. Civ. P. 244(f). There is, therefore, no need to rely on the common law inconsistency rule. In the future, a party seeking a new trial on the ground that the verdict was inadequate should use the grounds in rule 244 rather than the common law inconsistency rule.

That brings us to the next issue.

### III. Whether the District Court Erred in Granting a New Trial if the Plaintiff Alone Refused to Accept the Additur.

The district court granted Fisher a new trial on damages unless both parties accepted an additur of $1000 for pain and suffering related to her neck injury. We can assume that Fisher refused the additur because there is nothing in the record to indicate otherwise.

Iowa Rule of Civil Procedure 250 governs conditional new trials. The rule pertinently provides:

*a.* The district court may permit a *party to avoid* a new trial under R.C.P. ... 244 by agreeing to such terms or conditions as it may impose, which shall then be shown of record and a judgment entered accordingly.

*b.* If the term or condition imposed is a choice between consenting to a reduced, modified or increased judgment amount or proceeding to a new trial, ... then the choice shall be made by filing a written consent to the reduced, modified or increased judgment with the clerk of the district court in which the case was tried. . . .

Iowa R. Civ. P. 250(a), (b) (emphasis added).

■■ Whether the district court erred in conditioning the new trial on the consent of both parties turns on our interpretation of the rule. Rules have the force and effect of statutes. *Anderson v. Goodyear Tire & Rubber Co.*, 259 N.W.2d 814, 819 (Iowa 1977). Consequently, we interpret rules in the same manner we interpret statutes. *See id.* Because the issue is one of interpretation, our review is for correction of errors at law. *See State v. Azneer*, 526 N.W.2d 298, 299 (Iowa 1995) (reviewing statutory construction matters for corrections of errors at law).

The opening language of the rule makes plain that only the party wishing to avoid a new trial has the right to accept or decline the condition, which in this case is an additur. *See* Iowa R. Civ. P. 250(a) ("The district court may permit a party to avoid a new trial under R.C.P. ... 244 by agreeing to such terms or conditions as it may impose. . . ."). Our interpretation of the rule does not prejudice either party. If either party thinks the additur is unjustified, they may appeal, and the effect of the appeal nullifies the district court's order. *See* Iowa R. Civ. P. 250(c) (providing that in the event of an appeal "any such term or condition or judgment entered pursuant to district court order shall be deemed of no force and effect and the original judgment entered pursuant to R.C.P. 223 shall be deemed reinstated").

■ Here, Fisher moved for a new trial. Therefore, she was not "the party wishing to avoid a new trial." Davis resisted Fisher's motion for new trial. She was therefore "the party wishing to avoid a new trial." The district court erred in ordering additur unless both parties consented. The court should have required only Davis' consent.

We have already determined that the original judgment, which by the appeal was reinstated, was inadequate, not sustained by sufficient evidence, and contrary to law. We reverse that judgment and remand. On remand the district court can again decide whether or not to grant a new trial on condition of an additur or simply to grant a new trial. Should the court decide to grant a new trial on condition of an additur, the court shall require only Davis' consent.

That brings us to the last issue in the case.

## IV. Whether, if a New Trial is Granted, the Issues Should be Limited to Damages Relating to Fisher's Neck Injury.

■ In the event of a retrial, Davis wants the jury to consider only the damages relating to Fisher's neck injury. In contrast, Fisher insists that the jury consider damages relating to all three of Fisher's injuries—neck, elbow, and shoulder. Davis apparently concedes liability is not in issue and that there should be no retrial on that issue. We agree there should be no retrial on liability.

By its award for the precise medical expenses relating to Fisher's neck injury, the jury clearly found that Fisher did sustain a neck injury in the collision. But inherent in that award was also a clear rejection of Fisher's claim that her elbow and shoulder were also injured in the collision. In these circumstances, we think any retrial should be limited to damages relating to Fisher's neck injury.

Fisher's reliance on *Brant v. Bockholt*, 532 N.W.2d 801 (Iowa 1995), is misplaced. In *Brant*, we ordered a retrial on all elements of damages, reasoning that a jury's determination of various elements of damages are apt to be influenced by the recovery allowed for other elements of damages. *Brant*, 532 N.W.2d at 805. In *Brant*, we held the district court erred in not instructing on an additional element of damages pertaining to *one* injury. *Id.* at 804–05. That led us to conclude that the jury should consider anew *all* the elements of damages pertaining to that injury.

In contrast, here, Fisher claimed three separate injuries. The jury clearly rejected Fisher's claim relating to two of those three injuries. The elements of damages

pertaining to the rejected claims are irrelevant to the elements of damages pertaining to the injury the jury did believe Fisher sustained in the collision.

## IV. Disposition.

In sum, we conclude the verdict in this case was inadequate, not sustained by sufficient evidence, and contrary to law. The district court was therefore correct in ruling that Fisher was entitled to a new trial on that ground. However, it erred in granting the new trial on condition that both parties consent to the additur. The appeal rendered the district court's order of no force and effect. For that reason, the judgment on the jury's award was reinstated. Because we conclude the award was inadequate, not sustained by sufficient evidence, and contrary to law, we reverse the judgment and remand.

On remand the district court must again decide whether to simply grant a new trial or grant a new trial on condition of additur. Should the court grant a new trial on condition of additur, the court shall require only Davis' consent. If either party is dissatisfied with the additur, that party may appeal. The appeal shall nullify the district court's order of additur. In the event of a retrial, the issues shall be limited to the damages relating to Fisher's neck injury.

**REVERSED AND REMANDED WITH DIRECTIONS.**