# IN THE COURT OF APPEALS OF IOWA

No. 16-1437
Filed January 10, 2018

**ALEVIA GREEN,**
    Plaintiff-Appellant,

**vs.**

**CITY OF FORT DODGE, IOWA, A Municipal Corporation,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Webster County, Kurt J. Stoebe, Judge.

    Alevia Green appeals from the district court's denial of the motion for new trial and apportionment of court costs. **AFFIRMED.**

    Jerry L. Schnurr III of Schnurr Law Firm, P.C., Fort Dodge, for appellant.

    J. Scott Bardole of Andersen & Associates, West Des Moines, for appellee.

    Heard by Danilson, C.J., and Doyle and Mullins, JJ.

**DANILSON, Chief Judge.**

Alevia Green appeals from the district court's denial of the motion for new trial and apportionment of court costs. Green maintains a new trial should be granted because post-verdict evidence establishes jury confusion as to damages. Green contends she is entitled to a new trial on the basis the verdict is inadequate as to damages and is not supported by sufficient evidence and does not render substantial justice as to damages and the allocation of fault. Green also asserts the trial court abused its discretion in apportioning costs equally between both parties. Upon careful review of the evidence, we find the trial court did not err or abuse its discretion in denying the motion for new trial. We also find the court acted within its discretion in assessing costs equally between the parties. We therefore affirm.

**I. Background Facts & Proceedings.**

On April 30, 2012, Green was working as a sorter at a recycling center in Fort Dodge when an employee of the City of Fort Dodge (the City) drove a truck carrying a dumpster into the recycling center to dump a load of paper. Green was working in the paper pile, and the employee backed up the truck to the pile near the area where Green was sorting. Green was approximately eight feet from the passenger side front wheel of the truck. Green did not move away from the truck. The employee pulled forward at idle speed and raised the dumpster to dump its contents. The employee hit the brakes to shake loose the remaining paper from the dumpster, causing the dumpster door to swing loose and strike Green in the right back shoulder, knocking her to the ground.

Green was taken to the hospital and reported headaches and pain in her upper back and shoulder. A CT scan[1] revealed Green did not have bleeding in her brain. Green reported she did not remember anything between being struck by the dumpster door and when she was in the ambulance. Green was diagnosed with a Grade 3 concussion—a minor head injury.

Between the date of the injury and the date of trial commencing July 12, 2016, Green saw approximately nine doctors to address continuing pain in her shoulder, upper back, and neck; ongoing migraines, which Green maintains began as a result of her injury; and anxiety. Green was released to return to work at the recycling center in August 2012. Green was given a different position requiring less physical activity but was fired in February 2013 because she could not keep up with the responsibilities of her job.

Green filed suit against the City on April 25, 2014, alleging the city employee's negligence caused Green's injuries. Green sought damages for past and future medical expenses, loss of earnings, loss of earning capacity, past and future physical and mental pain and suffering, and past and future loss of use. The jury trial was held July 12 through 14, 2016. On July 18, the jury rendered its sealed verdict finding both Green and the City fifty percent at fault. The jury awarded Green $25,000 for past medical expenses, $10,000 for past pain and suffering, $1000 for past loss of use, and $5000 for loss of earnings, totaling

---

[1] Also known as a computerized tomography scan, a CT scan "combines a series of X-ray images taken from different angles and uses computer processing to create cross-sectional images, or slices, of the bones, blood vessels and soft tissues inside your body." https://www.mayoclinic.org/tests-procedures/ct-scan/basics/definition/prc-20014610 (last visited Dec. 18, 2017).

$41,000. The jury did not award damages for future medical expenses, future

pain and suffering, future loss of use, or loss of earning capacity.

After the rendering of the verdict, the following occurred[2]:

> [T]he court attendant told me that we had a verdict. Got the verdict form, called counsel, ran through the verdict forms.
>
> I . . . ran through the answers that there were. And they appeared to be consistent and so I was ready to discharge the jury.
>
> We went in to tell the jury that they were discharged. And as I have been instructed to do in my continuing education classes, I conduct sort of a debriefing for the jury. And we are instructed not to ask them how they've reached their verdict. And there is sort of a standard response that I give, which is whatever verdict you have reached is the right verdict.
>
> . . . .
>
> I believe maybe it was the third time that they broached that issue that someone said . . . .
>
> Someone said that they wanted to give the plaintiff $41,000. And I didn't say anything. One of the jurors then looked at me and said, well, that is the amount that the plaintiff will receive, right, something to that effect. And I said no.
>
> Well—And I was asked why. I said because you have assessed 50/50 on the negligence issue so the plaintiff will actually receive $20,000. The next reaction was uniform shock by the jury. That is not what we want to have happen. How do we change that. I told them that there wasn't anything that they could do about it because I was back in the jury room and they were no longer deliberating. My presence contaminated their deliberation.
>
> They asked me what would happen. And I said, well, I don't know, but I suppose it's possible that the matter could be mistried and retried. And there was uniform shock about that. We don't want that to happen. Isn't there someone we can call. Can't we talk to someone. I said, well, the attorneys will contact you and you can talk to the attorneys about what happened. . . .
>
> On and on we went. And finally they said isn't there something we can do tonight. I said, well, you can write . . . a letter to the attorneys, to the Court, and that I will file that letter. I will give that to the attorneys, and we'll go from there. I suggested to them that they all sign the letter if they all agreed to it.

The jurors filled out a second verdict form to express their desire that

Green ultimately receive $41,000. The second verdict form still allocated fifty

---

[2] As explained by the trial court at the hearing on posttrial motions held August 8, 2016.

percent fault to both Green and the City, but awarded $50,000 for past medical expenses, $20,000 for past pain and suffering, $2,000 for past loss of use, and $10,000 for loss of earnings. At the bottom of the form, the jury wrote, "The wording of question 6 was misinterpreted by the jury. We intended to award Alevia Green the $41,000. Please see above where we have reconfigured our totals."

Question 6 instructed:

> State the amount of damages sustained by Alevia Green caused by the fault of the City of Fort Dodge as to each of the following items of damage. Do not take into consideration any reduction of damages due to Alevia Green's fault. If Alevia Green has failed to prove any item of damage, or has failed to prove that any item of damage was caused by the fault of the City of Fort Dodge enter "0" for that item.

On July 28, Green filed a motion for new trial, arguing a new trial was warranted because the damages awarded were inadequate, inconsistent, and appeared to have been influenced by confusion; and the verdict was not supported by sufficient evidence. The trial court set a hearing for August 8, 2016, stating "[a]s a result of the confusion in the verdict, the court must determine whether to accept the verdict or declare a mistrial." The City resisted the motion for new trial, but suggested at the August 8 hearing on posttrial motions the trial court could enter an additur to award Green the full $41,000 to correct the confusion surrounding the damages award. The City stated it would not object to an additur. However, Green's attorney seemingly stated Green

would not agree to an additur and maintained a new trial was appropriate under the circumstances.[3]  In an August 11 order, the trial court ultimately held:

> The court finds that the verdict is supported by the evidence given the discretion in setting non-economic damages. . . .
> The heart of the matter is the jury's professed misinterpretation of the language in Question No. [6] telling them "not to take into consideration any reduction of damages due to Alevia Green's fault."  In reality, the jury followed the instruction correctly in rendering its verdict.  The problem has arisen when the jury was misinformed how the court would apply the attribution of negligence to the verdict.
> The plaintiff argues that the jury's desire to award a given amount and to work backward to a result entitles her to a mistrial because it constitutes jury misconduct and the equivalent of a quotient verdict.  The argument would be persuasive if the jury had indeed done that.  But it did not.  The jury wants the court to do such a computation post trial and the jury has requested that the parties permit the court to enter such a verdict.  However, the verdict, as it was rendered, was appropriate and correctly computed.

The trial court upheld the jury's verdict awarding Green $20,500 in total damages and assessing costs equally between the parties.[4]  Green now

---

[3] At the hearing on post-trial motions, on the issue of the additur Green's counsel stated:
> The issue of the additur—the additurs and remittiturs, I think, are appropriate when the court determines that—I think they're pretty much on the same basis as a new trial.  The court determines that a jury has made a decision not supported by the evidence.  They've considered something that's outside the record or improper for them to consider in reaching their verdict.  It's based on prejudice or bias or sympathy or inappropriate sympathy for one party or the other.  So I think those are the grounds for granting additurs or remittiturs, which are the grounds we've argued—some of the grounds we've argued that it would be appropriate for a new trial in this case.
> And so I think whatever has to be done, it has to be supported by the evidence.  I think it has to be supported by the instructions.  And I think the idea—I think the idea of the jury reaching—saying we want her to get $41,000, now we fill in the blanks to try and make that is—Well, it's not exactly a quotient verdict.  It follows the same mind-set.
> . . . .
> So I think that's one of the things we have going on in this case and that's—that's one of the bases for a new trial.  While I grant—granted the court has the authority to issue an additur, I think it has to be based on what the evidence is under the law.

appeals. Green contends a new trial is warranted because passion or prejudice caused the jury to award inadequate damages under Iowa Rule of Civil Procedure 1.1004(4), sufficient evidence does not support the verdict as to damages and the allocation of fault pursuant to Iowa Rule of Civil Procedure 1.1004(6), and the verdict fails to effect substantial justice. Green also asserts the trial court erred in assessing costs to be divided equally between the parties.

**II. Standard of Review.**

"We review the denial of a motion for new trial based on the grounds asserted in the motion." *Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012) (citation omitted). Because sufficiency of the evidence presents a legal question, we review a challenge to the trial court's denial of a motion for new trial under rule 1.1004(6) for the correction of errors at law. *Id.* We review the district court's denial of a motion for new trial based on the claim the jury awarded inadequate damages under rule 1.1004(4) for an abuse of discretion. *See id.*

"In addition to the grounds for granting a new trial set out in rule 1.1004(6) [and (4)], the trial court has inherent power to set aside a verdict when the court concludes, 'the verdict fails to administer substantial justice.' We review the court's ruling on a motion for new trial based on this ground for an abuse of discretion." *Estate of Hagedorn ex rel. Hagedorn v. Peterson*, 690 N.W.2d 84, 87-88 (Iowa 2004) (citations omitted).

"In reviewing the motion for new trial, '[w]e view the evidence in the light most favorable to the verdict and need only consider the evidence favorable to

---

[4] The court's order referred to the jury's original verdict as a sealed verdict, but the record does not contain any evidence of the parties' consent to a sealed verdict or the jury's instruction respecting a sealed verdict.

plaintiff whether it is contradicted or not.'" *Estate of Pearson ex rel. Latta v. Interstate Power & Light Co.*, 700 N.W.2d 333, 345 (Iowa 2005) (citation omitted).

We review the trial court's apportionment of costs for an abuse of discretion. *Long v. Jensen*, 522 N.W.2d 621, 624 (Iowa 1994); *see also* Iowa Code § 625.3 (2011).

**III. Analysis.**

**A. Post-Verdict Jury Statements.** Green asserts the jury rendered an inadequate verdict as to damages and the inadequate damages determination was influenced by the jury's confusion of the instructions and verdict form. In support of these contentions, Green relies on the evidence of the jury's statements to the trial court following the rendering of its verdict and the jury's second submitted verdict form indicating it desired Green to receive $41,000.

We first note the court's order entered following the hearing on posttrial issues indicated the jury was to submit its verdict by sealed verdict. Iowa Rule of Civil Procedure 1.931(3) provides:

> When, by consent of the parties and the court, the jury has been permitted to seal its finding and separates before it is rendered, such sealing is equivalent to a rendition and a recording thereof in open court, and such jury shall not be polled or permitted to disagree with respect thereto.

The principle that the jury may not be polled or later disagree with its sealed verdict was addressed in *Rutledge v. Johnson*, 282 N.W.2d 111, 113 (Iowa 1979):

> The rule's proscription against polling of the jury or permitting it to disagree with its verdict once sealed protects against a danger associated with a sealed verdict practice. Because the

> jurors are allowed to separate after having sealed their verdict, it is feared that they might be induced by extraneous influences to attempt to unsettle the verdict.

Notwithstanding, the proscriptions against polling the jury or allowing disagreements with the sealed verdict, in *Rutledge* our supreme court also stated:

> Despite such danger, this court has repeatedly recognized a limited power of the trial court "to reassemble a jury even after it has rendered a sealed verdict and has been discharged and to permit a showing thereby that through inadvertence or clerical error the verdict rendered does not in form express the real verdict reached by the jury in its deliberations . . . ." *P. M. Lattner Mfg. Co. v. Higgins*, 195 N.W. 746, 747 (Iowa 1923).

282 N.W.2d at 114. Thus, even if a sealed verdict was properly used in this case, if the jury "through inadvertence or clerical error" signed the verdict in mistake, the court could accept a corrected verdict. *Id.*

One of the difficulties here is the absence of any record that the parties consented to a sealed verdict. Because rule 1.931 requires consent of the parties and a sealed verdict contemplates a waiver of polling of jurors, trial courts should make a formal record of the agreement of counsel.

We also note there is no specific jury instruction referencing a sealed verdict.[5] The better practice would be to include within the return-of-verdict instruction an explanation to the jury that after signing the verdict it should be placed within the sealed verdict envelope, and the jury should then inform the court attendant. The jury instruction should also provide separation instructions, if any. Here, although neither party has challenged the lack of compliance with

---

[5] Instruction 33 provides in part, "When you have agreed upon the verdict and appropriately signed it, tell the court attendant." No reference is made to a sealed verdict.

rule 1.931, we conclude we are not confined to the limitations imposed by the rule.

Following the return of the verdict, the trial court spoke with the jurors prior to discharging them from duty. When asked, the court informed the jury Green would receive half of the $41,000 award because the jury assigned Green and the City each fifty-percent fault. The jury expressed its dismay and filled out a second verdict form indicating it misinterpreted Question 6—which instructed the jury not to "take into consideration any reduction of damages due to Alevia Green's fault"—and intended Green to receive the full award of $41,000.

Neither party has submitted juror affidavits to challenge the verdict of the jury. Notwithstanding, Green asks that we consider the judge's rendition of the jurors' statements as evidence of the jury's confusion to support the relief sought, a new trial.

Generally, a juror is not competent to testify "as a witness before the other jurors at the trial." Iowa R. Evid. 5.606(a). Further, Iowa Rule of Evidence 5.606(b)(1) provides:

> During an inquiry into the validity of a verdict . . . , a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything upon that juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

However, one of the exceptions to this principle allows juror testimony to show "[a] mistake was made in entering the verdict on the verdict form." Iowa R. Evid. 5.606(b)(2)(C).

We are also guided by our supreme court's explanation of the limited circumstances in which a jury verdict may be amended, corrected, or reformed on the basis of juror testimony. With respect to omissions by a jury, in *Rutledge* the supreme court stated:

> [T]here are two classes of omissions which are to be considered ministerial, and thus amendable. The first consists of omissions which related to uncontroverted matters in view of the jury's unmistakable findings. The second class of correctable omissions, however, may pertain to either undisputed or disputed issues. The essential characteristic of this class is that a decision had been previously reached by the jury with regard to the omitted matter, but inadvertently was not recorded.

282 N.W.2d at 114-15 (citations omitted). Of course, mistakes in rendering a verdict may not involve an omission. In *Weatherwax v. Koontz*, 545 N.W.2d 522, 524 (Iowa 1996), the supreme court explained: "[A] juror's testimony can be received to show that (1) a verdict was not correctly recorded or (2) external matters were improperly brought into deliberations. It cannot be received to show the jury's thinking processes were incorrect." In *Prendergast v. Smith Laboratories, Inc.*, 440 N.W.2d 880, 883-84 (Iowa 1989), the supreme court stated what evidence may *not* be considered: "If the issue were whether a verdict may be overturned because it was induced by the jury's misunderstanding of the court's instructions, rule [5.]606(b) would render juror testimony inadmissible for purposes of achieving that result."

In sum, our cases make a distinction between a clerical error by the jury in rendering its verdict and a mistake in understanding the jury instructions. The difficulty lies in distinguishing between a clerical error and a misunderstanding of the instructions.

This court considered a similar issue in *Dudley v. GMT Corp.*, 541 N.W.2d 259 (Iowa 1995). In *Dudley*, the plaintiff requested a new trial because juror affidavits and testimony indicated

> [t]he jury believed [the plaintiff] would "receive 45% of the recovery" even though it has assigned her 55% of the fault. The jury erroneously concluded that since it had found the plaintiff to be more than 50% at fault, the court would determine the amount of [the plaintiff]'s damages and she would recover 45% of that amount.

541 N.W.2d at 260. However, the court noted, "Any juror testimony regarding the jury's misunderstanding of the instruction is inadmissible." *Id.* at 261. The court held:

> The juror affidavits also indicate the jury did not believe its assignment of more than 50% of the fault to [the plaintiff] would deprive her of any recovery of damages. The jury was specifically instructed of this outcome in Instruction 29. Jury dissatisfaction with the result stemming from application of the law is not a basis for setting aside the verdict.

*Id.* This is precisely the scenario in the case before us. The juror's statements—as explained on the record by the trial court and by the jury in the second verdict form—were used to show the jury's misunderstanding of the verdict form and to explain its desire that Green actually receive the full $41,000. Clearly, the jury was not satisfied with the application of the law resulting in Green being awarded half the amount of damages found based on the jury's comparative fault determination. Setting aside the verdict or granting a new trial due to jury dissatisfaction with the result of its lawful verdict is not appropriate. *See id.* We therefore find the jury's mistake was not clerical but was a misunderstanding of the jury instructions, and Green is not entitled to a new trial.

**B. Damages.** Green maintains the jury's damages award was inadequate,[6] not supported by sufficient evidence,[7] and failed to effect substantial justice.[8] Although the insufficiency of the evidence, failure to effect substantial justice, and inadequacy of damages are independent grounds for challenging a jury verdict, we discuss them together because Green's argument in support of all the claims raised is identical.[9]

"The district court may grant an aggrieved party a new trial when the jury awards excessive or inadequate damages, or when the verdict is not sustained by sufficient evidence . . . ." *Fisher v. Davis*, 601 N.W.2d 54, 57 (Iowa 1999). "If uncontroverted facts show the amount of the verdict bears no reasonable relationship to the loss suffered, the verdict is inadequate." *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d, 150, 162 (Iowa 2004) (citation omitted).

> Although evidence presented at trial may justify a higher damage award, this alone does not control. The key question is whether after examining the record, "giving the jury its right to accept or reject whatever portions of the conflicting evidence it chose, the verdict effects substantial justice between the parties."

*Foggia v. Des Moines Bowl-O-Mat, Inc.*, 543 N.W.2d 889, 891 (Iowa 1996) (citation omitted). "Whether damages in a given case are adequate depends on

---

[6] *See* Iowa R. Civ. P. 1.1004(4) (providing a new trial may be granted if the jury has awarded "[e]xcessive or inadequate damages appearing to have been influenced by passion or prejudice").

[7] *See* Iowa R. Civ. P. 1.1004(6) (providing a new trial may be granted it if is shown "[t]hat the verdict, . . . is not sustained by sufficient evidence").

[8] *See Hagedorn*, 690 N.W.2d at 87.

[9] We also note Green contends the jury's verdict was essentially a quotient verdict because "the jury started with the final figure of $41,000, [and] filled in the verdict form without regard for the evidence or the instructions" and the verdict was "based upon something other than the evidence submitted at trial." "A quotient verdict is 'a verdict in which the jurors agree in advance to be bound by the average of the amounts written down by each juror.'" *Manno v. McIntosh*, 519 N.W.2d 815, 822 (Iowa 1994) (citation omitted). There is no evidence in this case establishing the jury reached its verdict in this manner.

the particular facts of the case. The test is whether the verdict fairly and reasonably compensates the party for the injury sustained." *Fisher*, 601 N.W.2d at 57 (citation omitted). "A jury's assessment of damages should be disturbed 'only for the most compelling reasons.'" *Latta*, 700 N.W.2d at 345 (citation omitted).

Green contends the damages awarded bear no reasonable relationship to the loss she suffered. Green argues there was no dispute that her past medical expenses totaled $45,531, and thus, there was no basis for the jury's failure to award total damages less than that amount. Green also asserts the evidence established she was entitled to $68,148 for past lost earnings and an amount for future damages. However, the defense submitted evidence at trial calling into question the extent of Green's injuries and the necessity of ongoing medical treatment:

> Q. Ms. Green, I want to go through some of your medical records with you. Now you saw Dr. Rondinelli. You don't recall exactly seeing him, but you don't dispute that you saw him; do you? A. No.
>
> Q. All right. One of the comments that Dr. Rondinelli had was that he said that you had dysfunctional behavior consistent with emotional dysregulation and symptom magnification. That's what that record says; is that correct? A. If that's what it says.
>
> . . . .
>
> Q. And then you saw—you went to your family doctor at Trimark. . . . And the doctor said it's difficult to extract a reliable and consistent history; is that correct? A. That's what it said.
>
> . . . .
>
> Q. And then on May 31 of 2012, you saw Dr. Mooney in Ames, and Dr. Mooney indicates certainly all of her symptoms are not consistent with the injury and there appears to be significant psychological overlay. And he says that at least it's unusual for someone to be complaining of anxiety, depression symptoms this early after a head trauma injury and her symptoms appear to be at least moderately exaggerated. Do you see that? A. I see that.

Q. And here you were at the occupational therapist on May—excuse me, June 14, 2012, and in the notes it says down here it appears her pain may be less than reporting noted by her increase in range in motion and her increase in your ability to perform functional tasks. And they indicated that there was symptom magnification present. Do you see that? . . . A. Yes.

Q. And then in physical therapy again on July 5 of 2012, it says the patient's given inconsistent information regarding pain and activity tolerance. Do you see that? A. Yes.

Q. All right. Dr. Mooney saw you on August 8, 2012. He indicates there's significant variation in your pain complaints and evidence of symptom magnification based on the neuropsychiatric testing. It is not my opinion that she is [ninety] days post injury, has essentially normal physical examination, and no objective findings to correlate with her ongoing complaints. You see that? A. Yes.

Q. And at that point he released you to return to work, in August of 2012— A. Yes.

Based on the evidence presented at trial, the jury could have found Green exaggerated her complaints of pain and sought medical treatment beyond what was necessary to remedy the injuries she sustained. The jury also could have concluded Green was originally injured as she has reported, but the injuries were resolved at some point in time despite Green's continuous reporting of pain and headaches up to the date of trial. The jury appropriately awarded an amount for past medical costs and a corresponding amount for loss of earnings and pain and suffering that was reasonably related to the evidence presented at trial. The jury's decision not to award future damages is also not inconsistent with the evidence. The verdict as to damages is adequate, is supported by substantial evidence, and does not fail to effect substantial justice. We find the trial court neither erred nor abused its discretion in denying the motion for new trial on the issue of damages and affirm.

**C. Allocation of Fault.** Green also contends the jury's finding Green fifty percent at fault was supported by insufficient evidence and failed to effect substantial justice.

"If a jury verdict is not supported by sufficient evidence and fails to effectuate substantial justice, a new trial may be ordered." *Olson v. Sumpter*, 728 N.W.2d 844, 850 (Iowa 2007). "Evidence is substantial when 'reasonable minds would accept the evidence as adequate to reach the same findings.'" *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009) (citation omitted).

Green argues there is no evidence establishing Green was partially at fault during the incident.

Instruction 18 directed the jury in determining Green's fault, if any:

> The City of Fort Dodge claims that Alevia Green was at fault. These grounds of fault are explained to you in other instructions.
> The defendant must prove all of the following propositions:
> 1. Alevia Green was at fault. In order to prove fault, [the City] must prove that she was negligent in one or more of the following ways:
> a. That she failed to maintain a proper lookout;
> b. That she failed to exercise reasonable care for her own safety.
> If the [City] has failed to prove either of these propositions, they have not proved their defense. If [the City] has proved both of these propositions, then you will assign a percentage of fault against [Green] and include [Green's] fault in the total percentage of fault found by you answering the special verdicts.

Instruction 19 defined "proper lookout" as "the lookout a reasonable person would keep in the same or similar situation. It means more than looking and seeing. It includes being aware of one's movements in relation to thing seen or that could have been seen in the exercise of ordinary care." Further, Instruction 20 provided:

A party is required to exercise reasonable care for their own safety. This means that, if, in the exercise of ordinary care under the circumstances, a party could have taken some particular action after an act of fault of another party, in order to avoid an injury, then they are under a duty to take such action.

In this case [the City] claims that [Green] unreasonably failed to take action to avoid an injury because:

    a. She failed to maintain a proper lookout;
    b. She failed to exercise reasonable care for her own safety.

Green's counsel did not object to these instructions. On the issue of fault, the trial court found in its ruling on the motion for new trial:

[T]here is evidence that supports the allocation of fault to [Green]. In short, [Green] was struck by the door of a roll-off dumpster as its contents were being discharged. [Green] worked at the recycling facility where the dumpster was being unloaded. She did not move or turn around as the dumpster was being raised. The rear door struck her in the back of her head. Thus, a trier of fact could attribute negligence to [Green] because she did not watch the dumpster or move.

At trial, Green agreed "[i]t's safer to not stand by a truck" and stated she did not move away from the truck as it was dumping. Green's former supervisor at the recycling plant stated Green was facing away from the truck, bent down picking up paper prior to being hit by the dumpster door. Upon consideration of the evidence and the instructions, the jury could have found Green failed to maintain a proper lookout and exercise reasonable care for her own safety by continuing to work with her back turned near the truck as it was unloading the dumpster. Viewing the evidence "in the light most favorable to the verdict," *Latta*, 700 N.W.2d at 345, we find substantial evidence supported the jury's verdict as to the allocation of fault, and the trial court did not err in denying the motion for new trial.

**D. Apportionment of Costs.**

Last, Green argues the trial court abused its discretion in assessing costs equally between the parties.

Iowa Code section 625.1 provides, "Costs shall be recovered by the successful against the losing party." Additionally, section 625.3 allows the court to make an equitable apportionment of costs "[w]here the party is successful as to a part of the party's demand, and fails as to part."

Here, the jury found each party fifty percent at fault and such finding was supported by the evidence. The trial court acted within its discretion in apportioning costs equally between the parties in accordance with the allocation of fault. *See Long*, 522 N.W.2d at 624 ("The trial court did not abuse its discretion in apportioning costs according to the comparative fault percentages.").

**IV. Conclusion.**

We find the district court did not err or abuse its discretion in denying the motion for new trial. We also conclude the court did not abuse its discretion in assessing costs equally between the parties. We therefore affirm.

**AFFIRMED.**